Raymond KILLINGSWORTH and Patsy Killingsworth, Petitioners–Appellants

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

T.B. HUDSON and Dorothy Hudson, Petitioners–Appellants

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Donald R. METZ and Cathy S. Metz, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Herbert H. BLANKINSHIP and V. Elizabeth Blankinship, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Hugh L. CLEARMAN and Dorothy Clearman, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Robert C. NOREN and Willie M. Noren, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Alfred L. FRIEDLANDER and Paula Friedlander, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Nos. 87–4623, 88–4227 and 88–4551.

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1989.

---

Martin M. Ruken, Chicago, Ill., for petitioners-appellants in No. 87–4623.

William F. Nelson, Chief Counsel, I.R.S., Kenneth L. Greene, Glenn L. Archer, Jr., Michael L. Paup, Chief, Michael C. Durney, Richard Farber, Asst. Attys. Gen., Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee in No. 87–4623.

Martin M. Ruken, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for petitioners-appellants in No. 88–4227.

William F. Nelson, Chief Counsel, I.R.S., Kenneth L. Greene, Gary R. Allen, Chief, William S. Rose, Jr., Richard Farber, Asst. Attys. Gen., Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee in No. 88–4227.

Martin M. Ruken, Stuart D. Kenney, Chicago, Ill., for petitioners-appellants in No. 88–4551.

Gary R. Allen, William S. Rose, Jr., William F. Nelson, Chief Counsel, I.R.S., Kenneth L. Greene, Asst. Attys. Gen., Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee in No. 88–4551.

Before JOHNSON, DAVIS, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

Petitioners/appellants appeal from a decision of the Tax Court which disallowed their claimed tax deductions for losses incurred as a result of straddle transaction trading on the London Metal Exchange. For the reasons cited herein, we affirm.

I. FACTS AND PROCEDURAL HISTORY

At issue in this case is the deductibility of losses allegedly incurred by taxpayers as a result of trading on the London Metal

Exchange, or, as the Seventh Circuit appropriately characterized the controversy, the "eternal tension between form and substance."[1] The transactions involved here are the so called "straddle transactions" which have been traditionally used by investors to minimize or reduce market risks associated with commodities trading.[2] In the instant case, appellants are among over 1,100 investors who claimed as tax deductions some 100 million dollars in aggregate losses from option straddle or option hedge transaction trading on the London Metal Exchange. More specifically, the investors (hereafter referred to as the "taxpayers") reported losses from the straddles as ordinary losses (which offset ordinary income), and reported the gains from the straddles as capital gains. After the Commissioner of Internal Revenue (the "Commissioner") disallowed the deductions, the taxpayers, including the appellants in the instant case, filed suit in the Tax Court seeking review of the Commissioner's ruling. The Tax Court thereafter consolidated the cases in the largest consolidated proceeding in Tax Court history. *Glass v. Commissioner,* 87 T.C. 1087 (1986).

In the Tax Court, the Commissioner argued that 1) the London options transactions were factual shams; 2) that if the transactions were real, they nevertheless lacked economic substance; and 3) that regardless of the economic substance inquiry, the transactions were not deductible under Section 165(c)(2) of the Internal Revenue Code of 1954 or Section 108 of the Tax Reform Act of 1984 because the taxpayers did not enter into the transactions primarily for profit. The Tax Court assumed, without really reaching the issue, that the transactions were not factual shams because they actually occurred. The Tax Court then ruled that the transactions lacked economic substance and were therefore shams in substance.[3] The Tax Court further concluded that because the taxpayers, including the appellants in the instant case, did not enter into the transactions primarily for profit, neither section 108 nor section 165 was available to permit the claimed deductions. Accordingly, the Tax Court upheld the Commissioner's disallowance of appellants' tax deductions for losses incurred in the straddles. Thereafter, the appellants timely appealed.

## II. DISCUSSION

It is a well settled rule of law that transactions that lack economic substance will not be recognized for tax purposes. *Gregory v. Helvering,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Since *Gregory* was decided, courts have consistently held that although a transaction may, on its face, satisfy applicable Internal Revenue Code criteria, it will nevertheless remain unrecognized for tax purposes if it is lacking in economic substance. See e.g., *Knetsch v. United States,* 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); *United States v. General Geophysical Co.,* 296 F.2d 86 (5th Cir.1961). The presence or absence of economic substance is determined by viewing the objective realities of the transaction, namely, whether what was actually done is what the parties to the transaction purported to do. *Gregory* at 469, 55 S.Ct. at 267. In the instant case, the Tax Court, applying the *Gregory* standard, concluded that the straddle transactions at issue lacked economic substance because they were entered into by the tax-

---

1. *Yosha, et. al. v. Commissioner,* 861 F.2d 494 (7th Cir.1988).

2. For a technical explanation of straddle transactions, see *Miller v. Commissioner,* 836 F.2d 1274 (10th Cir.1988); *Yosha, et. al. v. Commissioner,* 861 F.2d 494 (7th Cir.1988); *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 838 F.2d 904 (7th Cir.1988). For background information, *see generally* Black & Scholes, The Pricing of Options and Corporate Liabilities, 81 J.Po.Econ. 637 (1973).

3. In *Falsetti v. Commissioner,* 85 T.C. 332, 347 (1985), the Tax Court defined "sham in substance" as the expedient of drawing up papers to characterize transactions contrary to objective economic realities and which have no economic significance beyond expected tax benefits." *Id.* at 347. The Ninth Circuit has defined a transaction as a sham in substance if it is fictitious or if it has no business purpose or economic effect other than the creation of tax deductions. *Sochin v. Commissioner,* 843 F.2d 351, 354 (9th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988).

payers solely to reduce the taxpayers' respective tax liabilities.

■ With respect to the Tax Court's findings of fact, the appropriate appellate standard of review is whether those findings of fact were clearly erroneous. *Commissioner v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960); *Laney v. Commissioner*, 674 F.2d 342, 345 (5th Cir.1982). For the Tax Court's conclusions of law, however, we are free to review on a de novo basis. *Fender v. United States*, 577 F.2d 934, 936 (5th Cir.1978). The Tax Court assumed that the straddle transactions involved in the instant case were not factual shams, and logically, the taxpayers have no quarrel with that assumption. The taxpayers do, however, dispute the Tax Court's legal conclusion that the straddle transactions were shams in substance and urge this Court to find, upon de novo review, that the Tax Court was in error in that conclusion. The taxpayers on brief contend that the Tax Court's erroneous legal conclusion in that regard "flow[s] inevitably from the [Tax Court's] false premise that the sham, profit and economic substance determination can all be made by focusing on the first year closing transaction to the exclusion of the strategy as a whole." The taxpayers remarkably, however, overlook the following language in the Tax Court's thorough opinion which is clearly representative of the Tax Court's perspective—

> [w]e reemphasize ... that the focus of our attention is petitioners' entire tax straddle scheme and not each separate straddle. It is the overall scheme which taints the deductibility of the year one losses.

*Glass v. Commissioner*, 87 T.C. 1087, 1174 (citations omitted). Viewing the transactions as a whole, as did the Tax Court, we are unable to find error in the Tax Court's conclusion that the straddle transactions were shams in substance. We agree with the Tax Court's conclusion that

> [i]t requires no lengthy or elaborate analysis of the facts to demonstrate that [the taxpayers] did not enter into these

transactions primarily for economic profit, and that the transactions under scrutiny were not "the type of tax-motivated transaction which Congress intended to encourage."

*Id.* at 1162 (quoting *Fox v. Commissioner*, 82 T.C. 1001, 1019 (1984)).

■ The taxpayers next pay much attention to Section 108 of the Tax Reform Act of 1984, Pub.L. No. 98–369 § 108, 98 Stat. 494, 630 (1984) ("section 108") and urge that its provisions countenance the type of straddle transactions which are at issue in this case. Specifically, the taxpayers argue that because there was an objectively reasonable potential for profit in the transactions, then section 108 applies with full force so as to allow the claimed deductions. The original version of section 108 reads in part as follows:

> (a) GENERAL RULE.—For purposes of the Internal Revenue Code of 1954, in the case of any disposition of 1 or more positions—
>
> > (1) which were entered into before 1982 and form part of a straddle ...
>
> ... any loss from such disposition shall be allowed for the taxable year of the disposition if such position is part of *a transaction entered into for profit.* ...

Pub.L. No. 98–369, § 108, 98 Stat. 494, 630 (1984) (emphasis added).

Before the enactment of section 108, the circumstances under which a taxpayer could deduct the losses from a commodities future straddle were unclear. In a 1977 private letter ruling, the Internal Revenue Service (IRS) held that losses on one leg of a straddle were not deductible as long as the other leg of the straddle remained open. *See* Rev.Rul. 77–185, 1977–1 C.B. 48. The Tax Court, however, disagreed with the IRS' standard and concluded that the appropriate litmus for deductibility of losses in year one of a straddle transaction was whether a taxpayer seeking to claim such a deduction entered into the transaction for profit as required by section 165(c)(2). The Tax Court's adoption of this subjective test[4] proved troublesome since the IRS

---

**4.** The United States Supreme Court earlier indi-   cated that a "for profit" provision in a tax de-

stuck to its position that losses incurred on one leg of an *open* straddle were not deductible. Concerned about the potential for a substantial increase in the volume of litigation because of the disparity in the positions of the Tax Court and the IRS, Congress enacted section 108.

While Congress, through the enactment of section 108, ostensibly resolved the conflict between the positions of the Tax Court and the IRS with respect to *when* losses on one leg of a straddle could be deducted, it created a new problem—the interpretation of section 108's "entered into for profit" standard. Was the proper construction of the "entered into for profit" language to be the objective "reasonable prospect of any profit" test or the subjective "primarily for profit" standard of section 165? Wrestling with that question, the Tax Court concluded that Congress intended section 108 to mandate an objective test, namely, whether the particular straddle transaction had a "reasonable prospect of any profit" at the time of its acquisition. *Miller v. Commissioner,* 84 T.C. 827, 842 (1985). This result obtained notwithstanding the similarity of the language of section 108 and the language of section 165(c)(1).

After *Miller* was decided, Congress, in a move which brought section 108 more in line with section 165, amended section 108 by replacing the language "if such position is part of a transaction entered into for profit" with the following language:

> if such loss is incurred in a trade or business, or if such loss is incurred in a transaction entered into for profit though not connected with a trade or business . . .

Section 108(a)(2) of Pub.L. No. 98–369, as amended by Pub.L. No. 99–514, § 1808(d), 100 Stat. 2085, 2817–18 (1986). *See also* 26 U.S.C. § 165(c). The House Report incident to the above amendment stated that the purpose of the amendment was, in part, to disclose a legislative intent to adopt in section 108 the same subjective "primarily for profit" standard of section 165(c)(2).[5] It was this House Report in conjunction with the Tenth Circuit's reversal of the *Miller* case that propelled the Tax Court to conclude that section 108, like section 165(c)(2), dictated a subjective standard. *Boswell v. Commissioner,* 91 T.C. No. 15, 91 T.C. 151 (July 26, 1988) (overruling *Miller*). *But see Wehrly v. United States,* 808 F.2d 1311 (9th Cir.1986) (deductions on losses allowable if the straddle had a reasonable prospect for generating profits).[6]

■ The taxpayers in the instant case urge that the test under section 108 is objective and that the proper standard is therefore whether the transactions at issue had a reasonable prospect of profit independent of tax considerations. As we see it, however, either test yields unfavorable results for the taxpayers. *See Yosha, supra* at 502. Viewed objectively, the transactions involved appear to be devoid of profit making potential. The Tax Court noted that the taxpayers could have profited from difference gains in the straddles had they not, in every single instance, closed on sold options in the first year of the straddle. Accordingly, the Tax Court reasoned that any profit potential during that year was foreclosed. We agree.

The option transactions were designed to deliver ordinary losses which could be deducted against unrelated ordinary income.

duction context should be governed by a subjective standard. *Helvering v. National Grocery Co.,* 304 U.S. 282, 289 n. 5, 58 S.Ct. 932, 936 n. 5, 82 L.Ed. 1346 (1938). The language of § 165(c)(2) is as follows:

> losses incurred in *any transaction entered into for profit,* though not connected with a trade or business . . .

26 U.S.C. § 165(c)(2) (West 1988) (emphasis added).

**5.** For a summary of the legislative history of amended § 108, *see Glass v. Commissioner,* 87 T.C. 1087, 1168–69.

**6.** *Wehrly* has been subsequently displaced by *Landreth v. Commissioner,* 859 F.2d 643 (9th Cir.1988), in which the Ninth Circuit held that "section 108 allows taxpayers to deduct losses from straddle transactions only if they can show that their *primary* motive for entering into the transactions was economic profit." *Id.* at 649 (emphasis in original) (citations omitted). Thus, the Ninth Circuit has also adopted the subjective test.

As the Commissioner succinctly states on brief, the transactions at issue in this case "consisted of nothing more than the sale for a fee of tax deductions to American taxpayers." An examination of the record likewise leads us to the conclusion that the transactions had no real economic effect on the taxpayers other than the conference of tax advantages. Thus, even when viewed objectively, the transactions did "not appreciably affect [the taxpayers'] beneficial interest except to reduce [their] tax." *Knetsch, supra,* 364 U.S. at 366, 81 S.Ct. at 135 (citation omitted). Indeed, the whole scheme smacks of tax avoidance and the taxpayers fare no better under the objective test than they do under the subjective test. Nevertheless, we are persuaded that a subjective standard is the better approach under section 108.

## III. CONCLUSION

Because we conclude that the Tax Court did not err in finding that the straddle transactions involved in this case were shams in substance, we affirm the Tax Court's disallowance of appellants' claimed tax deductions for losses incurred as a result of those transactions. The decision of the Tax Court is

AFFIRMED.