111 T.C. No. 11


UNITED STATES TAX COURT


RICHARD D. FRAZIER AND YVONNE FRAZIER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3343-96.            Filed September 22, 1998.


Ps owned investment real property subject to a recourse mortgage. Upon default, the property was acquired by the lender at a foreclosure sale. At the foreclosure sale, the lender bid in an amount for the property which was in excess of the property's fair market value. R determined that the "amount realized" by Ps at the foreclosure sale was the amount bid in by the lender, regardless of fair market value.

<u>Held</u>: P's "amount realized" at the foreclosure sale is the property's fair market value.

<u>Held</u>, <u>further</u>: Bifurcated analysis used to determine income tax consequences of "amount realized" and income from cancellation of indebtedness.

<u>Held</u>, <u>further</u>: Ps are not liable for accuracy-related penalty determined by R.


<u>Michael L. Cook</u> and <u>William R. Leighton</u>, for petitioners.

Steven B. Bass, for respondent.

PARR, Judge:  Respondent determined deficiencies in petitioners' Federal income tax for taxable years 1988 and 1989 in the amounts of $387 and $40,482, respectively.  In the answer, respondent asserted that petitioner is liable for an addition to tax pursuant to section 6662(a).[1]

After concessions, the issues for decision are:  (1) Whether for 1989 petitioners realized $571,179 on the foreclosure sale of certain real property or a lower amount which represents the property's fair market value.  We hold petitioners realized a lower amount which represents the property's fair market value. (2) Whether for 1989 petitioners are liable for the accuracy-related penalty pursuant to section 6662(a).  We hold they are not.

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference.  At the time the petition in this case was filed, petitioners resided in Austin, Texas.

### FINDINGS OF FACT

Petitioners owned real property located at 3501 Dime Circle in Austin, Texas (the Dime Circle property).  The Dime Circle

---

[1]   All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  References to petitioner are to Richard D. Frazier.  All dollar amounts are rounded to the nearest dollar.

property was not used in any trade or business of petitioner. The mortgage on the Dime Circle property, which secured a recourse obligation against petitioner, was foreclosed by the lender on August 1, 1989, at which time petitioners were insolvent. The lender bid in the Dime Circle property at the foreclosure sale for $571,179. The record is silent as to how the bid-in price was determined. Apparently, the only bid was that of the lender.

At the time of the foreclosure sale, the outstanding principal balance of the debt was $585,943. The lender did not attempt to collect the difference between the outstanding balance of the debt and the bid-in amount. On August 1, 1989, petitioners' adjusted basis in the Dime Circle property was $495,544 (cost basis of $682,682 minus accumulated depreciation of $187,138). After the transaction, petitioners were still insolvent.

At the time of the sale, real estate prices had dropped dramatically throughout Texas, causing many foreclosures and bank failures throughout the State. The Dime Circle property was not resold until about 2 and a half years later for approximately $382,000.

The fair market value of the Dime Circle property at the time of the foreclosure sale was $375,000.

OPINION

Issue 1.  Amount Realized on Foreclosure Sale

Respondent determined that petitioners realized $571,179 on the foreclosure sale of the Dime Circle property, which represents the amount bid in by the lender.  Petitioners assert that the amount realized on the foreclosure sale is determined by the fair market value of the property, which is different from the amount bid in by the lender.  We agree with petitioners.

In general, the transfer of property in consideration of the discharge or reduction of indebtedness is equivalent to the sale of property upon which gain or loss is realized.  E.g., Gehl v. Commissioner, 102 T.C. 784, 785 (1994), affd. without published opinion 50 F.3d 12 (8th Cir. 1995); Danenberg v. Commissioner, 73 T.C. 370, 380-381 (1979); Estate of Delman v. Commissioner, 73 T.C. 15, 28 (1979); Bialock v. Commissioner, 35 T.C. 649, 660 (1961); Marcaccio v. Commissioner, T.C. Memo. 1995-174.  The amount of gain realized is the excess of the amount realized over the taxpayer's adjusted basis in the property, and the amount of loss realized is the excess of the adjusted basis over the amount realized.  Sec. 1001(a).

For purposes of computing gain or loss, the "amount realized" is defined by section 1001(b) as the sum of any money received plus the fair market value of the property received.

However, the amount realized from the transfer of property in consideration of the discharge or reduction of indebtedness depends on whether the debt is recourse or nonrecourse in nature. In the case of nonrecourse debt, the amount realized includes the full amount of the remaining debt. See, e.g., Commissioner v. Tufts, 461 U.S. 300 (1983); Gershkowitz v. Commissioner, 88 T.C. 984, 1016 (1987); Estate of Delman v. Commissioner, supra at 28-29. In the case of recourse debt, on the other hand, the amount realized from the transfer of property is the fair market value of the property. See, e.g., Bialock v. Commissioner, supra at 660-661; Marcaccio v. Commissioner, supra.

Furthermore, the amount realized from the sale or other disposition of property that secures a recourse debt does not include income from the discharge of indebtedness under section 61(a)(12). See sec. 1.1001-2(a)(2), Income Tax Regs. Such income will arise when the discharged amount of the recourse debt exceeds the fair market value of the property.

Generally, a taxpayer must recognize income from the discharge of indebtedness. Sec. 61(a)(12); United States v. Kirby Lumber Co., 284 U.S. 1 (1931). There are exceptions, however, to the recognition of income from the discharge of indebtedness, including cases where the discharge occurs when the taxpayer is insolvent. See sec. 108(a).

Absent clear and convincing proof to the contrary, the sale price of property at a foreclosure sale is presumed to be its fair market value. See Community Bank v. Commissioner, 79 T.C. 789, 792 (1982), affd. 819 F.2d 940 (9th Cir. 1987); Marcaccio v. Commissioner, supra. In this case, however, petitioners have rebutted this presumption with the required clear and convincing proof. Petitioners introduced an appraisal opining that the fair market value of the Dime Circle property on August 1, 1989, was $375,000, not $571,179 as bid in by the lender. Respondent offered no expert testimony on the fair market value and does not challenge the accuracy of the appraisal. Respondent merely argues that the bid-in amount must be used to determine the amount realized, regardless of how arbitrarily that amount may have been determined. We disagree.

In arguing that the bid-in amount must be used to determine the amount realized, respondent, in effect, maintains that we must respect the transaction for Federal income tax purposes. We are not bound to blindly accept a transaction, and the law is clear that courts may look behind a paper facade to find the actual substance and economic realities of a transaction. Knetsch v. United States, 364 U.S. 361, 369 (1960); Gregory v. Helvering, 293 U.S. 465, 469 (1935); Sandvall v. Commissioner, 898 F.2d 455, 458 (5th Cir. 1990), affg. T.C. Memo. 1989-56 and T.C. Memo. 1989-189; Merryman v. Commissioner, 873 F.2d 879, 881

(5th Cir. 1989), affg. T.C. Memo. 1988-72; <u>Killingsworth v.</u> <u>Commissioner</u>, 864 F.2d 1214, 1216 (5th Cir. 1989), affg. 87 T.C. 1087 (1986); <u>Boynton v. Commissioner</u>, 649 F.2d 1168, 1172 (5th Cir. 1981), affg. 72 T.C. 1147 (1977); <u>Swaim v. United States</u>, 651 F.2d 1066, 1069-1070 (5th Cir. 1981); <u>Kuper v. Commissioner</u>, 533 F.2d 152, 155-156 (5th Cir. 1976), affg. in part and revg. in part 61 T.C. 624 (1974); <u>Horn v. Commissioner</u>, 90 T.C. 908, 939 (1988); <u>Price v. Commissioner</u>, 88 T.C. 860, 884 (1987); <u>Capek v.</u> <u>Commissioner</u>, 86 T.C. 14, 47 (1986); <u>Forseth v. Commissioner</u>, 85 T.C. 127, 164 (1985), affd. 845 F.2d 746 (9th Cir. 1988); <u>Houchins v. Commissioner</u>, 79 T.C. 570, 589-590 (1982). In a case such as this, where the transaction is so disparate from the actual substance and economic realities of the situation, we are empowered, and in fact duty-bound, to look behind the transaction in order to apply the Internal Revenue Code accurately. <u>Forseth</u> <u>v. Commissioner</u>, <u>supra</u> at 164 (citing <u>Saviano v. Commissioner</u>, 765 F.2d 643, 654 (7th Cir. 1985), affg. 80 T.C. 955 (1983)).

The facts of the instant case are analogous to those provided in an example in the regulations. Section 1.1001-2(c), <u>Example</u>(<u>8</u>), Income Tax Regs., provides as follows:

> In 1980, F transfers to a creditor an asset with a fair market value of $6,000 and the creditor discharges $7,500 of indebtedness for which F is personally liable. The amount realized on the disposition of the asset is its fair market value ($6,000). In addition, F has income from the discharge of indebtedness of $1,500 ($7,500 - $6,000).

Respondent relies on Aizawa v. Commissioner, 99 T.C. 197 (1992), affd. without published opinion 29 F.3d 630 (9th Cir. 1994), for the proposition that the amount realized constitutes the amount of the proceeds of the foreclosure sale, i.e., the bid-in amount of the lender.  In Aizawa, the taxpayers owned rental property which was subject to a recourse mortgage, and upon default, the property was acquired by the mortgagee at a foreclosure sale.  We held that the amount of the proceeds of the foreclosure sale constituted the amount realized under section 1001(a).  Notwithstanding the similar facts and circumstances, Aizawa is distinguishable from the instant case on one key matter.  In Aizawa, the amount that the lender paid for the property at the foreclosure sale was equal to the fair market value of the property.  In Aizawa v. Commissioner, supra at 200-201, the Court stated:

> It cannot be gainsaid that the property was sold for $72,700 (an amount which we have no reason to conclude did not represent the fair market value of the property) and that petitioners received, by way of a reduction in the judgment of the foreclosure, that amount and nothing more.  That is the "amount realized" under section 1001(a) which is subtracted from petitioners' basis in order to determine the amount of their loss.  [Fn. ref. omitted; emphasis added.]

In the instant case, we have clear and convincing proof to conclude that the bid-in price of the lender does not represent the fair market value of the Dime Circle property.

We note that this was not an arm's-length transaction

between a willing buyer and a willing seller, neither being under compulsion to buy or sell and both having reasonable knowledge of relevant facts. See United States v. Cartwright, 411 U.S. 546, 551 (1973); United States v. Simmons, 346 F.2d 213, 217 (5th Cir. 1965); Frazee v. Commissioner, 98 T.C. 554, 562 (1992); see also sec. 1.170A-1(c)(2), Income Tax Regs. The amount bid in by a lender at a foreclosure sale may be arbitrary. As petitioners stated on brief, there are many possible reasons why a lender would bid in higher than the fair market value, such as if the lender believed it would be unable to collect a deficiency judgment because the debtor is contemplating bankruptcy, or simply to erase the loss from its books. See, e.g., Securities Mortgage Co. v. Commissioner, 58 T.C. 667, 669-670 (1972). However, we need not determine the intent of the lender in formulating the bid-in price. We are satisfied that the bid-in price did not represent the fair market value of the Dime Circle property. We find that the fair market value of the Dime Circle property on August 1, 1989, was $375,000. Accordingly, petitioners realized $375,000 on the disposition of the Dime Circle property.

We must now determine the Federal income tax consequences of this transaction for petitioners. Petitioners rely on Rev. Rul. 90-16, 1990-1 C.B. 12, and argue for bifurcation of the transaction. Respondent argues against his own revenue ruling,

asserting that a revenue ruling has limited precedential value for a court.  While we agree that a revenue ruling is not binding on the Court, <u>Stubbs, Overbeck & Associates, Inc. v. United States</u>, 445 F.2d 1142, 1146-1147 (5th Cir. 1971), a bifurcated analysis of the tax consequences for petitioners is appropriate here.

As discussed above, petitioners' gain or loss on their disposition of the Dime Circle property is computed pursuant to section 1001 and, as a general rule, the amount realized includes the full amount of the remaining debt.  Sec. 1.1001-2(a)(1), Income Tax Regs.  However, section 1.1001-2(a)(2), Income Tax Regs., provides an exception for recourse liabilities.  The regulation states that

> The amount realized on a sale or other disposition of property that secures a recourse liability does not include amounts that are (or would be if realized and recognized) income from the discharge of indebtedness under section 61(a)(12). * * *

This regulation effectively bifurcates the instant transaction into a taxable transfer of property and a taxable discharge from indebtedness.  Cf. <u>Michaels v. Commissioner</u>, 87 T.C. 1412, 1415 (1986).  Thus, according to the regulation, each

should be treated as a separate transaction for tax purposes.[2]  <u>Id.</u>

---

[2]    For a complete review of the bifurcation approach, see Cunningham, "Payment of Debt with Property--The Two-Step Analysis
(continued...)

Therefore, on the first step of the bifurcation analysis, petitioners realized a capital loss of $120,544[3] on the transfer of the Dime Circle property.  On the second step of the analysis, petitioners realized $210,943[4] of ordinary income from discharge of indebtedness.

Under certain circumstances, a taxpayer may exclude from gross income the income from discharge of indebtedness if the discharge occurs when the taxpayer is insolvent.  Sec. 108(a)(1)(B).  However, the exclusion cannot exceed the amount by which the taxpayer is insolvent.  For purposes of this section, "insolvent" is defined as "the excess of liabilities over the fair market value of assets."  Sec. 108(d)(3).

Petitioners' insolvency exceeded the income they realized from discharge of indebtedness.  Accordingly, the income petitioners realized from discharge of indebtedness in the instant transaction is excluded from their gross income pursuant to section 108(a)(1)(B).

---

[2](...continued)
After Commissioner v. Tufts", 38 Tax Law. 575 (1985).

[3]    This represents the difference between the fair market value of the property, $375,000, and petitioners' adjusted basis in the property, $495,544.

[4]    This represents the difference between the fair market value of the property, $375,000, and the outstanding balance of the debt, $585,943.  Petitioner testified that the lender did not attempt to collect the difference between the outstanding balance of the debt and the bid-in amount.

Issue 2.  Penalty Under Section 6662(a)

In the answer, respondent determined that for 1989 petitioners were liable for the accuracy-related penalty of section 6662(a).

On the basis of our holding above, there was no underpayment of tax due to petitioners' characterization of the disposition of the Dime Circle property.  Accordingly, petitioners are not liable for the accuracy-related penalty pursuant to section 6662.

To reflect concessions,

Decision will be entered under Rule 155.