T.C. Summary Opinion 2016-31

UNITED STATES TAX COURT

NAYEMUL B. CHOWDHURY AND LAILA BANU, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10034-14S.                    Filed June 30, 2016.

Nayemul B. Chowdhury and Laila Banu, pro sese.

Theresa McQueeney, for respondent.

SUMMARY OPINION

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in effect when the
petition was filed.  Pursuant to section 7463(b), the decision to be entered is not
reviewable by any other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent section references are

to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule

references are to the Tax Court Rules of Practice and Procedure.

In a notice of deficiency dated February 3, 2014, respondent determined a

deficiency of $7,305 in petitioners' 2011 Federal income tax, a section 6662(a)

accuracy-related penalty of $1,461, and a section 6651(a)(1) addition to tax of

$135 for failure to timely file a return.  After concessions,[1] the issues for decision

are:  (1) whether petitioners are entitled to deduct losses from the sale and

abandonment of business property; (2) whether petitioners are entitled to

deductions claimed on Schedule E, Supplemental Income and Loss of $5,419; (3)

whether petitioners are entitled to itemized deductions of $6,177 in excess of the

---

[1]Respondent agrees that petitioners did not receive any income from their business, Food and Frozen Stuff, LLC.  Petitioners agree that they had no deductible expenses from this same business.  Respondent agrees that petitioners are entitled to dependency exemption deductions for R. Begum and A. Ahmed. Petitioners conceded that they are not allowed a dependency exemption deduction for S. Farhana.  In addition, petitioners conceded that they failed to report $1,163 of income from a New York State tax refund and had $59 in taxable interest. Petitioners did not assign error to the determination of the addition to tax under sec. 6651(a)(1) for failure to timely file their 2011 Federal income tax return and did not offer any evidence with respect to this determination.  We therefore assume that petitioners have conceded the correctness of the determination of this addition to tax.  See Lawson v. Commissioner, T.C. Memo. 1963-179, aff'd, 350 F.2d 396 (4th Cir. 1965).

amount respondent allowed; and (4) whether petitioners are liable for an accuracy-related penalty under section 6662(a).[2]

Background

Some of the facts have been stipulated, and we incorporate the stipulation of facts by this reference. At the time the petition was timely filed, petitioners resided in New York.

On January 6, 2009, petitioners purchased a Häagen-Dazs franchise that would expire on January 31, 2012, from a private seller for a fee of $10,000. The transfer was approved by Häagen-Dazs on January 7, 2009. Petitioners operated this franchise together with a Submarina franchise that they had purchased.[3] Petitioners entered into a lease with 3143 Steinway Street, LLC, for the store premises for both franchises at the same location in Astoria, Queens, New York, effective February 1, 2009. In order to operate the franchises, petitioners were

---

[2]The adjustments in the notice of deficiency to the child tax credit and the self-employment tax are computational and will be resolved by the concessions and the Court's conclusion on other issues.

[3]These franchises were operated under the name Food & Frozen Stuff, LLC. The record does not show the legal nature of this "LLC". Petitioners reported the expenses from this entity on Schedule C, Profit or Loss From Business for 2011. Respondent does not assert that these expenses should not have been reported on petitioners' return. Accordingly, we assume that the LLC was a sole proprietorship for tax purposes.

required to renovate the premises. The record is not entirely clear, but it appears that the store was open for two or three months in early 2009 before petitioners closed the store for renovation.

In July 2009, the U.S. Small Business Administration (SBA), through Shinhan Bank America, approved a $180,000 loan to petitioners. Petitioners also invested approximately $120,000 of their own funds in the business. These funds came from various sources including bank accounts and the sale of personal assets.

Petitioners made the following payments to vendors to renovate the store:[4]

| Vendor | Amount |
| --- | --- |
| F.C. Dadson, Inc. | $51,916 |
| Fitch | 15,000 |
| Shepler Refrigeration | 7,000 |
| Postmatic | 1,750 |
| Henderson Mill & Fixture Group | 16,354 |
| Custom Business Solutions | 5,386 |
| Reddy Builders | 121,500 |
| Bohler Engineering | 2,500 |
| New York City Department of Buildings | 1,698 |
| Jam Consultants, Inc. | 1,200 |

---

[4]Consolidated by vendor and rounded to the nearest dollar.

The store reopened in January 2010. The store did not generate the revenue that petitioners had expected. By August petitioners had fallen behind on the store rent. The store closed on January 20, 2011, and petitioners were evicted and abandoned the leasehold improvements. Petitioners defaulted on the SBA loan. As a result of the default, Shinhan Bank America repossessed some of petitioners' equipment and sold it at auction. The net proceeds of $9,363[5] from the auction were applied to the amount that petitioners owed on the loan.

Petitioners were also part owners in a Sunoco gasoline station. This business closed in February 2011. Petitioners' home and property in Florida were also subject to foreclosure. Nayemul Chowdhury (petitioner) filed for bankruptcy protection on January 5, 2012 and he received a bankruptcy discharge on April 11, 2012. Petitioners were able to keep their home and the property in Florida.

On Schedule C for Food and Frozen Stuff, LLC, for 2011, petitioners reported $70,000 in income and $236,707 in expenses, for a net loss of $166,707. As mentioned above, respondent and petitioners now agree that petitioners had no income and no deductible expenses from this business for 2011. Petitioners assert that some of the expenses reported on this Schedule C should have been reported as losses on the sale or abandonment of property. On Form 4797, Sales of

---

[5]Rounded to the nearest dollar.

Business Property, petitioners reported losses of $33,793 from the abandonment of assets in their franchise activity. Respondent did not allow a deduction for any of these losses in the notice of deficiency.

On Schedule E petitioners reported no income and $5,419 of expenses related to a rental property in Naples, Florida. Respondent did not allow a deduction for any of these expenses in the notice of deficiency. On their 2011 tax return petitioners claimed itemized deductions totaling $30,237. Respondent allowed itemized deductions totaling $24,060 in the notice of deficiency.

Petitioners did not provide any evidence to support their deductions on Schedule E or the disallowed itemized deductions. To the extent petitioners presented records of their franchise activity, those records were disorganized and incomplete.

## Discussion

### I. Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners did not allege

or otherwise show that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioners bear the burden of proof. See Rule 142(a).

## II. Losses From the Sale and Abandonment of Business Property

### A. Sale of Repossessed Business Property

Petitioners seek to deduct losses from the sale of assets repossessed by their creditor. A sale in which the collateral is repossessed from the debtor constitutes a taxable sale or exchange by the debtor of the encumbered property. See Helvering v. Hammel, 311 U.S. 504, 506-511 (1941); Estate of Delman v. Commissioner, 73 T.C. 15, 28 (1979). The debtor's gain or loss in the disposition is measured by the difference between the amount realized in the disposition of the property and the debtor's adjusted basis in the property. Sec. 1001(a). In the case of recourse debt, the amount realized is the fair market value of the property repossessed. Frazier v. Commissioner, 111 T.C. 243, 245 (1998). In general, the debtor's basis is cost.[6] Sec. 1012. The debtor's basis must be reduced by the amount of depreciation that was allowed or allowable during 2010 and 2011. Sec. 1016(a)(2).

---

[6]Respondent argued that petitioners' basis in the assets should not include any amount paid for the assets with indebtedness that was discharged in 2012. We note that the proper basis for property includes amounts paid by indebtedness even if that indebtedness is discharged in a later year. See Crane v. Commissioner, 331 U.S. 1, 11 (1947).

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the expense, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  In Benichou v. Commissioner, T.C. Memo. 1970-263, the Court used the Cohan rule to approximate the taxpayer's basis.  In order for the Cohan rule to apply, there must be sufficient evidence in the record to provide a basis for the estimate.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

In this case, neither party provided evidence of the fair market value of the property repossessed.  We conclude that the fair market value of the property repossessed was the $9,363 that the creditor received from selling the property at auction.  Therefore, the amount realized is $9,363.

Although it is clear that many items were sold at the auction, it is not clear from the record how the items sold correspond to the assets purchased.  In order to compute the basis and allowable depreciation, we consider those purchases for items that were subject to auction.  Upon reviewing the invoices and checks in the record for payments to F.C. Dadson, Inc., Shepler Refrigeration, Postmatic, and Custom Business Solutions, we conclude that these payments were for the items

sold in the auction. These payments total $66,052.[7] In order to arrive at petitioners' adjusted basis, this amount must be reduced by the amount of allowable depreciation for 2010 and 2011, because these assets were placed in service in January 2010 when the store reopened.[8]

With some exceptions, section 168(k) allows an additional 50% depreciation deduction for the year in which property is placed in service if it is for property that (1) has a recovery period of 20 years or less; (2) was first used by the taxpayer; (3) was acquired by the taxpayer after December 31, 2007, and before January 1, 2013; and (4) is placed in service by the taxpayer before January 1, 2013. Upon reviewing the record, we conclude that these items were eligible for the additional 50% depreciation for 2010.

We also need to consider: (1) the classification of the property, (2) the basis for depreciation, (3) the recovery period, (4) the convention, and (5) the method. See secs. 167 and 168. Upon reviewing the record, we conclude that: (1) the property is a seven-year property, sec. 168(e)(3)(C)(v)(I); (2) the basis for

---

[7]$51,916 (F.C. Dadson, Inc.) + $7,000 (Shepler Refrigeration) + $1,750 (Postmatic) + $5,386 (Custom Business Solutions) = $66,052.

[8]We note that no depreciation was claimed on these assets for 2010 and that petitioners conceded that there were no expenses for this business for 2011.

depreciation is \$33,026;[9] (3) the recovery period is seven years, sec. 168(c);

(4) the half-year convention is applicable, sec. 168(d)(1); and (5) the applicable

depreciation method is the straight line method, sec. 1016(a)(2).

On the basis of the above conclusions, the parties can compute the

depreciation allowable for 2010 and 2011 in order to ultimately compute the loss

from the sale of the repossessed property under Rule 155.[10]

B.    Abandonment of Business Property

In addition to the assets that were repossessed, petitioners abandoned other

property used in the business.  Losses resulting from abandonment are sustained

during the year of abandonment and are deductible in the taxable year in which the

abandonment occurs.  Dezendorf v. Commissioner, T.C. Memo. 1961-280, aff'd,

312 F.2d 95 (5th Cir. 1963).  In order to establish abandonment, there must be an

---

[9] \$66,052 less 50% special depreciation allowance.

[10] In his pretrial memorandum respondent incorrectly refers to this loss as a capital loss.  The sale of certain property used in a trade or business is accorded favorable tax treatment.  Sec. 1231.  With some exceptions that are inapplicable here, the term "property used in a trade or business" includes property that is: (1) used in a trade or business; (2) subject to the allowance for depreciation; and (3) held for more than one year.  Sec. 1231(b)(1).  If the losses from the sale of property used in a trade or business exceed the gains from the sale of property used in a trade or business, then the net losses are treated as ordinary losses.  Sec. 1231(a)(2).  We conclude that the losses from the sale of the repossessed business property are losses from the sale of property used in a trade or business.

intention of the owner to abandon the property, coupled with an act of abandonment. W.B. Davis & Son, Inc. v. Commissioner, 5 T.C. 1195, 1219 (1945). The intention and the action are ascertained from the facts and circumstances. Id. Petitioners abandoned the leasehold improvements in the store and the Häagen-Dazs franchise when they were evicted from the store by their landlord.

In general, section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. A deductible loss may arise from the permanent withdrawal of property used in a trade or business. Secs. 1.165-2(a), (c), 1.167(a)-8, Income Tax Regs. The basis for determining the deduction is the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. Sec. 165(b). The basis is cost reduced by the amounts of amortization or depreciation that were allowed or allowable during 2010 and 2011. See secs. 1012, 1016(a)(2). As mentioned above, in Benichou the Court used the Cohan rule to estimate the taxpayer's basis.

In January 2009 petitioners purchased a Häagen-Dazs franchise for a transfer fee of $10,000. The store was open at least briefly in 2009, presumably starting in February 2009, and it closed in January 2011. On the basis of these

facts, the parties can compute the amortization allowable under section 197 for 2009, 2010, and 2011 in order to ultimately compute the loss from the abandonment of the franchise fee under Rule 155.

Petitioners also made substantial leasehold improvements. Although it is clear that petitioners invested significant funds in leasehold improvements, they have provided incomplete records regarding these purchases. In order to compute the basis and allowable depreciation, we have reviewed the invoices and checks in the record for payments to Fitch, Henderson Mill & Fixture Corp., Reddy Builders, Bohler Engineering, New York City Department of Buildings, and Jam Consultants, Inc.; we conclude that these payments were for abandoned leasehold improvements. These payments total $158,252.[11] In order to arrive at petitioners' adjusted basis, we need to reduce this amount by the amounts of allowable depreciation for 2010 and 2011 because the assets were placed in service in January 2010, when the store reopened.[12]

---

[11]$15,000 (Fitch) + $16,354 (Henderson Mill & Fixture Group) + $121,500 (Reddy Builders) + $2,500 (Bohler Engineering) +$1,698 (New York City Department of Buildings) + $1,200 (Jam Consultants, Inc.) = $158,252.

[12]We note that no depreciation was claimed on these assets for 2010 and that petitioners conceded that there were no expenses for this business for 2011.

In order to calculate the allowable depreciation, we consider whether a special depreciation allowance was available on these items for 2010. With some exceptions, section 168(k) allows an additional 50% depreciation deduction for property that (1) is qualified leasehold improvement property; (2) was first used by the taxpayer; (3) was acquired by the taxpayer after December 31, 2007, and before January 1, 2013; and (4) is placed in service by the taxpayer before January 1, 2013. In general, qualified leasehold improvement property is an improvement to the interior portion of a nonresidential real property where the improvement is made under the lease, the improved portion of the building is occupied exclusively by the lessee, and the improvement is placed in service more than three years after the date the building was first placed in service. Sec. 168(k)(3)(A). Upon reviewing the record, we conclude that these leasehold improvements were eligible for the additional 50% depreciation for 2010.[13]

We also need to consider: (1) the classification of the property, (2) the basis for depreciation, (3) the recovery period, (4) the convention, and (5) the method.

_____

[13]We need not consider whether the leasehold improvements are either qualified restaurant property or qualified retail improvement property because (1) both qualified restaurant property and qualified retail improvement property are also 15-year property, sec. 168(e)(3)(E), and (2) qualified restaurant property and qualified retail improvement property are eligible for the additional 50% depreciation when the property is also qualified leasehold improvement property, sec. 168(e)(7)(B), (8)(D).

<u>See</u> secs. 167 and 168. Upon reviewing the record, we conclude that: (1) the property is a 15-year property, sec. 168(e)(3)(E)(iv); (2) the basis for depreciation is $79,126;[14] (3) the recovery period is 15 years, sec. 168(c); (4) the half-year convention is applicable, sec. 168(d)(1); and (5) the applicable depreciation method is the straight line method, sec. 1016(a)(2).

On the basis of the above conclusions, the parties can compute the depreciation allowable for 2010 and 2011 in order to ultimately compute the amount of the loss from the abandonment of the leasehold improvements under Rule 155.[15]

### C.     Effect of 2012 Bankruptcy

Respondent asserts that the loss reported on abandonment and sale of petitioners' property was addressed by the bankruptcy court. Nothing in the record supports respondent's claim. Petitioner received his discharge in bankruptcy on April 11, 2012. Respondent's account transcript shows that petitioners' 2011 tax return was not received until September 16, 2012, after the

---

[14]$158,252 less 50% special depreciation allowance.

[15]Respondent incorrectly refers to this loss as a capital loss in his pretrial memorandum. An abandonment loss under sec. 165 is an ordinary loss unless it arises from the sale or exchange of a capital asset. <u>Allen v. Commissioner</u>, T.C. Memo. 1994-165.

discharge in bankruptcy. In addition, the records from the bankruptcy that were included as part of the record for this case do not show that petitioner sought to be relieved of his 2011 tax liability in the bankruptcy case.

Respondent also asserts that the basis of the assets sold and abandoned should be reduced as tax attributes because of petitioner's discharge in bankruptcy in 2012. Section 108(a) allows taxpayers to exclude discharge of indebtedness income from gross income in certain circumstances. Section 108(b) may require the reduction of tax attributes when discharge of indebtedness income is excluded under section 108(a). The amount of the reduction of tax attributes is generally the amount of the discharge of indebtedness income that is excluded from income. Sec. 108(b)(1), (3). Barring an election otherwise, net operating losses for the year of discharge and any net operating loss carried over to the year of discharge are reduced before the basis of the property of the taxpayer is reduced. Sec. 108(b)(2). Any amount of discharge of indebtedness income that is left after tax attribute reduction is disregarded and does not either result in income or have any other tax consequences.[16] The reductions to tax attributes are made after the determination of income tax for the year of discharge. Sec. 108(b)(4)(A).

---

[16]S. Rept. No. 96-1035, at 13 (1980), 1980-2 C.B. 620, 626.

In this case, the year of discharge is 2012. To the extent that any discharge of indebtedness income was excluded for 2012, section 108(b) may require a reduction in tax attributes. However, this reduction in tax attributes would not occur until after taxable income had been calculated for 2012, the year of the discharge. The basis of the assets repossessed or abandoned in 2011 is not reduced for 2011 as tax attributes under section 108 for the exclusion of discharge of indebtedness income that may have occurred in 2012.

III. Deductions

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions. Sec. 6001. Petitioners did not attempt to substantiate either their deductions claimed on Schedule E or their itemized deductions. Petitioners did not otherwise provide evidence disputing respondent's determinations for these deductions. Accordingly, the disallowed amounts for these deductions are deemed conceded by petitioners. See Rule 149(b).

IV. Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence. "Negligence" includes any failure to make a reasonable attempt to comply with the Code,

including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

The section 6662(a) accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer proves that there was reasonable cause for such portion and that he acted in good faith with respect thereto. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability; the knowledge and the experience of the taxpayer; and any reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

The Commissioner has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662. To satisfy that burden, the Commissioner must produce sufficient evidence showing that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent determined the accuracy-related penalty was due to negligence. Respondent has satisfied his burden by producing evidence that petitioners failed to maintain adequate books and records. Accordingly, because respondent has

met his burden of production, petitioners must come forward with persuasive evidence that the accuracy-related penalty should not be imposed with respect to the underpayment because, for example, they acted with reasonable cause and in good faith. See sec. 6664(c)(1); Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioners provided no evidence of expenses underlying either their Schedule E deductions or their itemized deductions. Petitioners conceded that they claimed losses on their Schedule C to which they are not entitled. Petitioners' records did not support the loss reported on Form 4797. Petitioners have not demonstrated that they acted with reasonable cause and in good faith with respect to the recordkeeping requirements; therefore, the Court sustains respondent's determinations on this issue.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.