T.C. Memo. 2019-59

UNITED STATES TAX COURT

CHARLES K. BRELAND, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

YVONNE S. BRELAND, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21946-12, 22228-12.　　　　Filed May 29, 2019.

John H. Adams, for petitioner Charles K. Breland, Jr.

Robert M. Galloway, for petitioner Yvonne S. Breland.

Edwin B. Cleverdon and Horace Crump, for respondent.

**[*2]**      MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  In separate notices of deficiency issued to petitioners dated June 4, 2012, respondent determined a deficiency of $1,632,107[1] and an accuracy-related penalty under section 6662(a) of $326,421 for the 2009 tax year.  After concessions,[2] the issue for decision is the amount of long-term capital loss that petitioners are entitled to deduct following the foreclosure of the mortgage on their property on Dauphin Island in Alabama in 2009.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulated facts are incorporated in our findings by this reference.  Petitioners were residents of Alabama when they timely filed their petitions.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for 2009.  Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[2] Petitioners conceded adjustments to their Schedule C, Profit or Loss from Business, of $38,010 and $13,632.  The parties stipulated that petitioners are entitled to deduct $55,442 in long-term capital loss related to a property referred to as 2470 SHS MDEVERYWHERE.  Respondent conceded that petitioners properly deducted $20,440 in capital loss related to Breland Family LLC and are not liable for accuracy-related penalties for 2009.

**[*3]** I. Petitioners' Real Estate Transactions

Before 2003 petitioners owned a shopping center in Alabama called Jubilee Pointe. On January 7, 2003, they sold Jubilee Pointe for $4,568,600 and deposited the proceeds with an intermediary. They used part of the proceeds to purchase three properties: (1) a property in Daphne, Alabama, for $720,000, (2) beachfront property in Pensacola, Florida, called Lot 52 for $1,400,000, and (3) 27.48% of the Grand Bay property in Mobile, Alabama, for $742,000.[3] In 2003 petitioners filed a Form 8824, Like-Kind Exchanges, with their Form 1040, U.S. Individual Income Tax Return, treating these transactions as eligible for deferred recognition of gain under section 1031.

Petitioners' 2003 Federal income tax return was not adjusted or audited by respondent. On their 2003 Form 8824, petitioners reported carrying over a basis of $1,894,436[4] from Jubilee Pointe to the three properties. They distributed their reported basis in Jubilee Pointe among the three properties proportionately according to their fair market values. As relevant here, petitioners report that they

---

[3] Petitioners purchased the whole Grand Bay property for $2,650,000.

[4] Petitioners reported a carryover basis of $1,894,436 on their 2003 Form 8824, but Mark Hieronymus, petitioners' accountant, testified that petitioners carried over $1,204,450 in basis from Jubilee Pointe. This difference does not affect our decision.

[*4] allocated $618,767 of their carryover basis to Lot 52. They then increased that basis by $805,200 for assumed liabilities and decreased it by $435,029 for satisfied liabilities, resulting in a reported adjusted basis in Lot 52 of $988,938.

On May 15, 2004, petitioners sold Lot 52 for $3,300,000 and deposited the proceeds with an intermediary. They subsequently purchased two properties--a lot on Dauphin Island (Dauphin Island 1) for $8 million and (2) a property on Wilmer Road in Grand Bay for $452,000. Petitioners filed a Form 8824 for 2004 treating these transactions as like-kind exchanges. Petitioners allocated $751,593 of their basis in Lot 52 to Dauphin Island 1 and the remaining $237,345 to the Wilmer Road property. After taking into account increases of $6,720,000 and $322,720, respectively, for liabilities assumed and cash contributed, and a decrease of $1,105,200 for liabilities satisfied in the sale of Lot 52, petitioners reported an adjusted basis in Dauphin Island 1 of $6,689,113.[5]

On July 28, 2005, petitioners purchased a second property on Dauphin Island (Dauphin Island 2) for $5,613,287. They financed the purchase of Dauphin Island 2 with a recourse mortgage loan from Whitney Bank for $11,200,000.

---

[5] In his posttrial briefs, respondent agrees that petitioners' adjusted basis in Dauphin Island 1 was at least $5,937,520.

[*5] Petitioners refinanced Dauphin Island 1 in the same loan agreement so the loan was secured by both Dauphin Island properties.

## II. Foreclosure and Bankruptcy

On March 9, 2009, petitioners defaulted on the loan secured by the Dauphin Island properties. The principal balance on the loan was $10,764,262 when they defaulted. Later that day, Whitney Bank foreclosed on the loan and held a foreclosure sale. The foreclosure deed provided that, in the case of default on the mortgage loan:

> Whitney National Bank is authorized and empowered by the Mortgage to sell the property described therein to the highest bidder for cash at public outcry at the front door of the Courthouse of Mobile County, Alabama, after giving notice of the time, place and terms of sale by publication once a week for three (3) consecutive weeks in a newspaper of general circulation published in Mobile County, Alabama.

The foreclosure deed went on to authorize Whitney Bank to "execute, for and in the name of the mortgagor, a good and sufficient deed conveying the property described in the Mortgage to the purchaser". Whitney Bank was the highest bidder, purchasing the Dauphin Island properties for $7,203,750.

On March 11, 2009, petitioners filed for chapter 11 bankruptcy protection in the Southern District of Alabama, and Whitney Bank filed a proof of claim for $6,254,478. Petitioners filed a joint Form 1040 for January 1 through March 11,

[*6] 2009, and their bankruptcy estate filed an income tax return for March 12, 2009, through the end of the calendar year.  Petitioners initially reported that the Dauphin Island properties were sold at foreclosure for $10,693,615--close to the full principal balance on their mortgage loan--and reported a capital loss of $1,809,090.  On January 6, 2012, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 2009 that reduced the sale price of the Dauphin Island properties to $7,203,750, the bid price paid by Whitney Bank, and reported an increased capital loss of $5,298,955.[6]

## OPINION

## I.  Burden of Proof

Ordinarily, the burden of proof in cases before the Court is on the taxpayer.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a), in certain circumstances the burden of proof may shift from the taxpayer to the Commissioner.  Petitioners have not satisfied the requirements under section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

---

[6] Petitioners amended their 2009 tax return at least twice before 2012.  The amendments made in those Forms 1040X are not relevant here.

**[*7]** II.  Capital Loss

Capital loss is the excess of the taxpayer's adjusted basis in a capital asset over the amount realized in the sale or disposition of that capital asset.  Sec. 1001(a); see also sec. 1222.  Therefore, the amount of petitioners' deductible capital loss depends on the amount they realized on the foreclosure sale of the Dauphin Island properties and their aggregate adjusted basis in those properties.

A.  Amount Realized

The amount realized from the sale or disposition of property equals the amount of money plus the fair market value of property received.  Sec. 1001(b).  Ordinarily, the amount a taxpayer realizes from the sale or disposition of property includes the amount of any liabilities from which the taxpayer is relieved as a result of that transaction.  Sec. 1.1001-2(a)(1), Income Tax Regs.  We apply this general rule in the case of nonrecourse debt--the amount realized includes all remaining debt in excess of the sale proceeds.  Commissioner v. Tufts, 461 U.S. 300, 310-312 (1983); Simonsen v. Commissioner, 150 T.C. 201, 211-212 (2018); Frazier v. Commissioner, 111 T.C. 243, 245 (1998).

Because this debt is recourse, however, the amount realized from the transfer of the property is the fair market value of the property.  Frazier v. Commissioner, 111 T.C. at 245.  In addition, "[t]he amount realized on a sale or

[*8] other disposition of property that secures a recourse liability does not include amounts that are (or would be if realized and recognized) income from the discharge of indebtedness under section 61(a)(12)." Sec. 1.1001-2(a)(2), Income Tax Regs.; see also Frazier v. Commissioner, 111 T.C. at 245; Aizawa v. Commissioner, 99 T.C. 197, 199 (1992), aff'd, 29 F.3d 630 (9th Cir. 1994). To determine petitioners' tax liability we then must answer two questions regarding their loan: (1) what was the fair market value of the property transferred by the foreclosure, and (2) what happened to the remaining loan balance. And as to the remaining loan balance, the regulation contemplates two possibilities--(a) the entire loan was extinguished so petitioners have income from discharge of indebtedness to the extent the loan exceeded the property's fair market value; or (b) the loan was not extinguished, so petitioners later may have discharge of indebtedness income to the extent that the loan is not repaid in full. See Aizawa v. Commissioner, 99 T.C. at 200.

Typically, the fair market value of property is the price at which the property would change hands between a willing buyer and willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. United States v. Cartwright, 411 U.S. 546, 551 (1973). Respondent contends that the bid price for the Dauphin Island properties at

[*9] foreclosure does not meet our typical definition of fair market value:  The properties did not change hands between a willing buyer and willing seller because petitioners were compelled to sell.  See Frazier v. Commissioner, 111 T.C. at 247-248.  However, in the case of mortgaged property sold at a foreclosure sale, we presume fair market value to be the bid price, absent clear and convincing evidence to the contrary.  Sec. 1.166-6(b)(2), Income Tax Regs.; see Frazier v. Commissioner, 111 T.C. at 246 (citing Cmty. Bank v. Commissioner, 79 T.C. 789, 792 (1982), aff'd, 819 F.2d 940 (9th Cir. 1987)); see also Aizawa v. Commissioner, 99 T.C. at 200 ("It cannot be gainsaid that the property was sold for $72,700 (an amount which we have no reason to conclude did not represent the fair market value of the property) and that petitioners received, by way of a reduction in the judgment of foreclosure, that amount and nothing more.").  Respondent points out that neither petitioners nor Whitney Bank obtained an objective appraisal of the Dauphin Island properties in connection with the foreclosure sale.  But in the absence of an appraisal or other reliable evidence of fair market value, no clear and convincing proof overrides the presumption that Whitney Bank's bid price was the fair market value.  Therefore, we conclude that the fair market value at the time of the foreclosure sale was the $7,203,750 Whitney Bank bid price.

**[\*10]** Respondent further contends that if the amount realized was the bid price, petitioners would have recognized discharge of indebtedness income under section 61(a)(12) or reduced their tax attributes under section 108(b). Because petitioners did not recognize section 61(a)(12) income or reduce their tax attributes, respondent argues, the amount realized could not have been the bid price. Petitioners argue that the discharge of indebtedness argument was new. They also maintain that it is not relevant because petitioners were in a chapter 11 bankruptcy proceeding and in that proceeding Whitney Bank was paid in full. We do not have before us the record of the bankruptcy proceeding, but we may take judicial notice of filings in a bankruptcy proceeding. See, e.g., Klein v. Commissioner, 135 T.C. 166, 167 n.1 (2010); Bunch v. Commissioner, T.C. Memo. 2014-177, at \*6 n.3; Powers v. Commissioner, T.C. Memo. 2013-134, at \*16 n.6 (taking judicial notice of the bankruptcy court's proceedings, docket entries relating to the proceedings, and the underlying documents); Jeffries v. Commissioner, T.C. Memo. 2010-172, 2010 WL 3035998, at \*3; Pitts v. Commissioner, T.C. Memo. 2010-101, 2010 WL 1838282, at \*2. We take notice that Whitney Bank filed a proof of claim in the bankruptcy proceeding.

While the parties stipulated that the debt was recourse, neither party addressed whether the loan was extinguished. The preponderance of the evidence

**[*11]** suggests that the balance of the recourse loan survived the foreclosure sale. There is no evidence that Whitney Bank forgave the balance of the mortgage loan as part of the foreclosure sale or issued to petitioners a Form 1099-C, Cancellation of Debt. The foreclosure deed merely provides that Whitney Bank was empowered to sell the Dauphin Island properties for cash, not that the sale was in satisfaction of the entire loan. The fact that Whitney Bank filed a proof of claim in petitioners' bankruptcy proceedings supports that conclusion. Therefore, we conclude that petitioners realized $7,203,750 from the sale of the Dauphin Island properties at foreclosure.

## B. Adjusted Basis

Generally, a taxpayer's basis in a property is the cost of that property. Sec. 1012(a). When property is acquired through a like-kind exchange under section 1031, the taxpayer's basis in the property acquired carries over from his basis in the property exchanged. Sec. 1031(d). The basis is increased by the amount of any gain realized on the exchange and by any liabilities assumed and is decreased by the amount of money received by the taxpayer and any loss realized on the exchange. Id.; secs. 1.1031(d)-1, 1.1031(j)-1(c) (regarding multiple properties), Income Tax Regs. Any liabilities of the taxpayer assumed by another party in consideration for the exchange are considered money received by the taxpayer.

[*12] Sec. 1031(d); sec. 1.1031(d)-2, Income Tax Regs. When multiple properties are received in a like-kind exchange, the basis carried over is allocated among the properties proportionately according to their fair market values. Sec. 1.1031(j)-1(c), Income Tax Regs.

Respondent does not dispute that petitioners paid $322,720 in cash and borrowed $6,720,000 for their acquisition of Dauphin Island 1 or that their cost basis in Dauphin Island 2 was $5,613,287. Respondent contends that petitioners have not substantiated their $751,953 basis in Dauphin Island 1, carried over from Jubilee Pointe through two successive like-kind exchanges. The only evidence of petitioners' basis in Jubilee Pointe is an excerpt of a depreciation schedule from petitioners' 2003 Form 1040; they did not offer a settlement statement or deed. But taxpayers cannot rely on tax returns to substantiate a tax item. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979). The parties' stipulation also expressly noted that the 2003 return was not audited; thus, this is not a situation where respondent has already reviewed the underlying transaction. We conclude that petitioners have not adequately substantiated their basis in Jubilee Pointe or, in turn, the basis that they carried over to Dauphin Island 1.

Therefore, petitioners' basis in Dauphin Island 1 is $5,937,520, consisting of the cash they spent and the indebtedness they incurred in purchasing the

**[*13]** property, less the liabilities satisfied as part of the transaction.  Along with their $5,613,287 basis in Dauphin Island 2, their aggregate basis in the Dauphin Island properties at the time of the foreclosure sale was $11,550,807.

Because petitioners realized $7,203,750 from the sale of the Dauphin Island properties at foreclosure and their basis in the properties was $11,550,807, we, therefore, conclude that petitioners' resulting long-term capital loss is $4,347,057.

We have considered all of the arguments made by the parties; and, to the extent they are not addressed above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decisions will be entered under</u>

<u>Rule 155</u>.