## JOHN ALBERT MICHAELS AND REBECCA HOOPER MICHAELS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 39917-85.          Filed December 23, 1986.

John Albert Michaels, pro se.

*Edwina L. Charlemagne,* and *Deborah L. Hildebran* for the respondent.

STERRETT, *Chief Judge*: The parties' cross-motions for summary judgment filed herein were assigned to Special Trial Judge Joan Seitz Pate pursuant to the provisions of section 7456(d) (redesignated as sec. 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755), and Rules 180 and 181.[1] After a review of the record, we agree with and adopt the opinion of the Special Trial Judge which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

PATE, *Special Trial Judge*: This case is before the Court on the parties' cross-motions for summary judgment under Rule 121. Respondent determined a deficiency in petitioners' 1982 Federal income tax of $1,293. The issues for our decision are (1) whether petitioners must recognize as income a discount allowed on the prepayment of a first

[1]Unless otherwise stated, all section references are to the Internal Revenue Code of 1954 as amended, and all rule references are to the Tax Court Rules of Practice and Procedure.

mortgage made in connection with the sale of their residence, and (2) if so, whether the discount is to be taxed as ordinary income or long-term capital gain.

The parties have either agreed to or conceded, for purposes of our ruling on their motions, the following facts. John Albert Michaels and Rebecca Hooper Michaels (hereinafter petitioners) are husband and wife and filed a joint income tax return for 1982. They resided in Raleigh, North Carolina, at the time their petition was filed.

In March 1978, petitioners purchased a residence for $36,639, including closing costs. The property was encumbered by a mortgage payable to Perpetual Federal Building & Loan of Anderson, South Carolina (hereinafter Perpetual). Petitioners sold this home in 1982 when they moved to Raleigh, North Carolina. The sale took place on June 30, 1982, for a stated sales price of $40,000.

In addition, the contract of sale specifically provided that the "Sale [was] contingent upon Seller receiving 25% discount on mortgage balance at Perpetual." Consequently, at settlement, petitioners' first mortgage loan was prepaid for an amount $6,378 less than the then principal balance of the loan. All of the benefit of this discount accrued to petitioners. In February 1983, petitioners purchased a new residence for $65,000.

Petitioners did not report this discount as income on their 1982 Federal income tax return. Instead, they included the discount as part of the gain on the sale of their residence, all of which they deferred pursuant to the provisions of section 1034. The parties have agreed that petitioners meet all of the requirements of section 1034 and are subject to its provisions. The only disagreement arises in the computation of the gain. Petitioners contend that the benefit they received from the discount is an integral part of the sales transaction and therefore is part of the gain realized but not recognized under section 1034. Respondent maintains that the discount Perpetual awarded cannot be taken into account in computing petitioners' gain under section 1034, but instead, must be taxed separately as income from discharge of indebtedness under section 61(a)(12). Moreover, respondent maintains that such discount must be taxed as ordinary income.

Generally, funds a taxpayer borrows are not includable in his gross income, even though they increase his assets, because the taxpayer has a corresponding liability to repay the loan. See *United States v. Rochelle*, 384 F.2d 748, 751 (5th Cir. 1967), cert. denied 390 U.S. 946 (1968); *Carolina, Clinchfield & Ohio Railway Co. v. Commissioner*, 82 T.C. 888, 896 (1984). Consequently, if a taxpayer pays off a debt at less than its face amount, the canceled portion constitutes income because it makes available assets previously offset by liabilities. Sec. 61(a)(12); sec. 1.61-12(a), Income Tax Regs.; *United States v. Kirby Lumber Co.*, 284 U.S. 1 (1931). Therefore, unless a statutory or judicial exception excludes the discount from income, the amount of the discount is included as discharge of indebtedness income in the year the debt is canceled. *Montgomery v. Commissioner*, 65 T.C. 511, 520 (1975). See sec. 1.61-12(e), Income Tax Regs. See also *Colonial Savings Association v. Commissioner*, 85 T.C. 855, 861-863 (1985).

Petitioners do not dispute these general rules, but rather contend that they do not apply in the instant case. They reason that because: they sold their residence during 1982; the prepayment of their mortgage was a consequence of that sale; and the buyer's funds were used for the prepayment; the resulting discount should be taken into account in computing the gain realized but not recognized under the provisions of section 1034.

In general, section 1034 requires that a taxpayer defer recognition of gain on the sale of a principal residence when the adjusted sales price of the residence sold is less than the cost of a new residence. The provisions of section 1034 affect only the amount of gain recognized in the year the residence is sold. The total gain realized is determined under the provisions of section 1001 and the regulations issued thereunder. Sec. 1.1034-1(a), Income Tax Regs.

Looking to section 1001, we find that gain from the sale of property is computed by subtracting from the "amount realized" on the sale the adjusted basis of the property. Secs. 1001(a), 1011. Section 1001(b) defines the term "amount realized" as the sum of any money plus the fair market value of other property received as a result of the sale. As a general rule, when a transferor is discharged from

a liability in connection with a sales transaction, the entire current balance of such liability is included in the amount realized. Sec. 1.1001-2(a)(1), Income Tax Regs.; *Commissioner v. Tufts*, 461 U.S. 300 (1983); *Crane v. Commissioner*, 331 U.S. 1 (1947).

However, section 1.1001-2(a)(2), Income Tax Regs., provides an exception for *recourse* liabilities.[2] It states that—

The amount realized on a sale or other disposition of property that secures a recourse liability does not include amounts that are (or would be if realized and recognized) income from the discharge of indebtedness under section 61(a)(12).] * * * [3]

This regulation effectively bifurcates the instant transaction by removing the amount of the discount from the computation of the amount realized and recognizing it as a separate income item. Therefore, although the prepayment of petitioners' mortgage was an integral part of the sale, the regulation treats it as a separate transaction for tax purposes.[4]

The term "amount realized" is also defined in section 1.1034-1(b)(4), Income Tax Regs., which states that—

(4) "Amount realized" is to be computed by subtracting

(i) The amount of the items which, in determining the gain from the sale of the old residence, are properly an offset against the considerations received upon the sale (such as commissions and expenses of advertising the property for sale, of preparing the deed, and of other legal services in connection with the sale); from

(ii) *The amount of the consideration so received, determined (in accordance with section 1001(b) and regulations issued thereunder)* by adding to the sum of any money so received, the fair market value of the property (other than money) so received. *If, as part of the consideration for the sale, the purchaser either assumes a liability of the taxpayer or*

---

[2]The record is silent as to whether petitioners' first mortgage was, in fact, a recourse or nonrecourse liability. However, this fact is presumed to be the basis of respondent's determination, and petitioner has not contended otherwise. See *Ewart v. Commissioner*, 85 T.C. 544, 547-548 (1985), on appeal (6th Cir., Jan. 8, 1986); *Jarvis v. Commissioner*, 78 T.C. 646, 658 (1982); Rule 34(b)(4).

[3]The regulation then refers to sec. 108 and sec. 1.61-12(b)(1), Income Tax Regs., for situations where amounts arising from the discharge of indebtedness are not realized and recognized. We have examined the provisions of those sections and find that they are not relevant to our determination of "amount realized" under the facts of this case.

[4]The bifurcated approach was adopted in analyzing a transaction involving discharge of indebtedness income in *Vukasovitch, Inc. v. Commissioner*, 790 F.2d 1409 (9th Cir. 1986), revg. T.C. Memo. 1984-611. For a review of the background of this approach, see Cunningham, "Payment of Debt with Property - The Two Step Analysis after *Commissioner v. Tufts*," 38 Tax Law. 575 (Spring 1985).

*acquires the old residence subject to a liability (whether or not the taxpayer is personally liable on the debt), such assumption or acquisition, in the amount of the liability, shall be treated as money received by the taxpayer in computing the "amount realized."*
[Emphasis supplied.]

In this regulation, the term "amount realized" has a slightly different meaning. First, for purposes of computing "gain realized" (defined in sec. 1.1034-1(b)(5), Income Tax Regs.), it allows the deduction of selling expenses (as defined in section 1.1034-1(b)(4)(i)), therefore making the term "amount of the consideration" in this regulation the equivalent of "amount realized" under section 1001(b).

Second, this regulation provides that "the [entire] amount of liability" shall be included in computing the amount of the consideration when the buyer assumes the liability of the seller or acquires the property subject to the liability. Consequently, under those circumstances, the transaction is not bifurcated even if, immediately thereafter, the buyer pays off the liability on the purchased property. However, this scenario is distinguishable from the instant transaction because (1) the buyer would receive the benefit of the discount instead of the seller, and (2) the buyer would have to recognize discharge of indebtedness income when he prepaid the liability. It appears, therefore, that in a sales transaction under section 1034 involving a discount on the prepayment of a recourse mortgage, the buyer and seller can determine which of them must recognize the discharge of indebtedness income, but cannot convert the discount into gain realized on the sale of the residence.

Our finding that the discount on the prepayment of the mortgage is not part of the amount realized on the sale is also determinative of the second issue before us. Income taxed under the capital gain provisions must result from the "sale or exchange" of a "capital asset." *National-Standard Co. v. Commissioner*, 749 F.2d 369, 370 (6th Cir. 1984), affg. 80 T.C. 551 (1983). By bifurcating the transaction, the regulations require that we view the prepayment of the mortgage separately from the sale. It is well settled that the payment of an obligation is not a "sale or exchange" for tax purposes. *Fairbanks v. United States*, 306 U.S. 436, 437 (1939); *Osenbach v. Commissioner*, 198

F.2d 235, 236-237 (4th Cir. 1952), affg. 17 T.C. 797 (1951). Therefore, since the discount here at issue was realized by the prepayment, which is not considered a sale or exchange, no capital gain can result.

Alternatively, petitioners argue that the discount reduces their basis in their residence, thereby increasing gain realized. Section 108 allows a taxpayer to exclude discharge of indebtedness income and reduce the basis of assets under certain circumstances. However, we have carefully examined the provisions of section 108 and have found nothing even arguably applicable to the facts in this case. Therefore, we find it unnecessary to discuss its lengthy provisions here.

Petitioners do not point to any other statutory or judicial exception supporting their argument.[5] They do argue, however, that Congress intended section 1034 to defer recognition of the gain on the sale of residences when taxpayers reinvest the proceeds from the sale of their homes in higher priced homes and that respondent's position defeats this objective.[6] While there is some force to this argument, we cannot afford petitioners relief without clear statutory authority for this proposition, as we are bound by the wording of the statute as enacted and the accompanying regulations, when consistent therewith.

Accordingly,

> *An appropriate order and decision will be entered.*

---

[5] But see *Fulton Gold Corp. v. Commissioner*, 31 B.T.A. 519 (1934).
[6] See H. Rept. 586, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 357, 377.