T.C. Summary Opinion 2008-61

UNITED STATES TAX COURT

GERARD EUGENE STEVENS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13218-06S.                    Filed June 3, 2008.

Gerard Eugene Stevens, pro se.

<u>Julie Jebe</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code (hereafter

Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $21,323 deficiency in petitioner's Federal income tax for 2003 and a $4,264 accuracy-related penalty under section 6662(a).

The issues for decision are: (1) Whether petitioner failed to include in income for 2003 income from discharge of indebtedness and (2) whether petitioner is liable for the accuracy-related penalty under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner resided in Illinois when he filed his petition. Sometime in either January or February 2002 petitioner and his former spouse, Sharon Stevens (the Stevenses), purchased real property located at 5015 South Wabash Avenue, Chicago, Illinois. The property purchased was a two-story residence in need of rehabilitation. The Stevenses purchased the property for investment purposes and intended to rehabilitate the dwelling and either rent the property or sell it thereafter. Petitioner and Sharon Stevens (Ms. Stevens) were married at the time the real property was purchased, and they resided in Evergreen Park, Illinois. The purchase price of the property was approximately

$256,000. The Stevenses financed the purchase by borrowing money from Homecomings Financial. The Stevenses executed a note and deed of trust/mortgage with Homecomings Financial and held title to the property as joint tenants. The record does not contain the note and deed of trust/mortgage.

Sometime later in 2002 the Stevenses found themselves unable to make the mortgage payments on the property. In order to avoid a foreclosure, which would have adversely affected their credit rating, they decided to sell the property in a short sale[1] with the approval of Homecomings Financial.

On January 3, 2003, the Stevenses (sellers) entered into a purchase agreement with Jemal King (buyer) to sell the property for $200,000. At that time the unpaid balance of the mortgage was greater than the selling price.

On February 14, 2003, the Stevens separated. Petitioner moved from the marital residence in Evergreen Park, Illinois, to Chicago, Illinois.

The short sale occurred on or about March 20, 2003. The property was conveyed to Jemal King by warranty deed executed by the Stevenses and recorded with the Cook County Recorder of Deeds on April 28, 2003.

---

[1] A "short sale" in real estate occurs when the outstanding loans against a property are greater than what the property is worth and the lender agrees to accept less than it is owed to permit a sale of the property that secures its note.

Homecomings Financial approved the "short sale" subject to the following terms and conditions: (1) Homecomings Financial was to receive no less than $181,461.31 for satisfaction of the debt, (2) certified payoff funds were to be received no later than March 24, 2003, (3) Homecomings Financial was to receive a certified copy of the final HUD settlement statement showing all taxes as paid, (4) the Stevenses were to receive no sale proceeds in the transaction and any excess funds were to be forwarded to Homecomings Financial, (5) the sale price was to be $200,000, (6) real estate commissions were not to exceed $10,000, and (7) closing costs, including taxes and repairs, were not to exceed $8,538.69. These terms and conditions extended only to the short sale of the property to Jemal King by the purchase agreement dated January 3, 2003.

Additionally, if the foregoing conditions were not met, Homecomings Financial reserved the right to return the payoff funds and require payment in full in accordance with the original terms of the note and deed of trust/mortgage. Homecomings Financial also noted that it might report the amount of the "discount" to the Internal Revenue Service.

Homecomings Financial subsequently mailed a Form 1099-C, Cancellation of Debt, to petitioner at his previous address in Evergreen Park, Illinois. The Form 1099-C stated that the mortgage loan debt of $74,494.96 was canceled by Homecomings

Financial on March 27, 2003. A duplicate Form 1099-C was mailed to Ms. Stevens also at the Evergreen Park, Illinois, address, reporting the same information as on the Form 1099-C mailed to petitioner. On March 27, 2003, petitioner resided at the Chicago address and Ms. Stevens resided at the Evergreen Park address. Ms. Stevens received both copies of the Form 1099-C and notified petitioner that she was in receipt of his copy.

Neither petitioner nor Ms. Stevens included the $74,494.96 resulting from the cancellation of mortgage loan debt in income for 2003 when they filed their respective Federal income tax returns. Further, neither petitioner nor Ms. Stevens reported the sale of the property on their respective 2003 income tax returns.

## Discussion

In general, the Commissioner's determination as set forth in a notice of deficiency is presumed correct, and the burden of proof is on the taxpayer to prove otherwise. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, under certain circumstances the burden shifts where a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the income tax liability of the taxpayer. Sec. 7491(a)(1). The resolution of whether petitioner had cancellation of indebtedness income does not depend on which party has the burden of proof. For the reasons discussed

*infra* we conclude that petitioner has failed to prove that he did not receive income from the relief of indebtedness.

Furthermore, section 6201(d), as pertinent here, provides that in any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return such as a Form 1099 filed by a third party and the taxpayer has fully cooperated with the Internal Revenue Service, the Commissioner has the burden of producing reasonable and probative information concerning the deficiency in addition to information on the return itself. Petitioner does not dispute the information contained on the Form 1099-C filed by Homecomings Financial. Therefore, there is no burden of production on respondent.

Generally, a taxpayer must include income from the discharge of indebtedness. See sec. 61(a)(12); sec. 1.61-12(a), Income Tax Regs. However, there are exceptions to this general rule. Section 108(a) provides that a taxpayer may exclude income from the discharge of indebtedness if the discharge occurs in a bankruptcy case, or when the taxpayer is insolvent, or if the indebtedness is qualified farm or business real estate debt. Although the real estate property was held by the Stevenses as investment property for the production of income, we cannot, for lack of sufficient facts, determine whether the exclusion for qualified real property indebtedness under section 108(a)(1)(D)

might apply. Likewise, the record is devoid of sufficient facts upon which we may determine whether the exclusion for insolvency under section 108(a)(1)(B) might apply. The record is similarly devoid of evidence suggesting that Homecomings Financial intended to make a gift to the Stevenses and to petitioner, specifically.

Where property subject to recourse debt is disposed of in satisfaction of the debt, the debt is deemed discharged. The disposition by the mortgagor of the property for a release of liability is treated as a sale or exchange upon which gain or loss is realized. Frazier v. Commissioner, 111 T.C. 243, 245 (1998). The amount of gain realized is the excess of the amount realized over the taxpayer's adjusted basis in the property, and correspondingly the amount of loss realized is the excess of the adjusted basis over the amount realized. Sec. 1001(a). The amount realized is defined by section 1001(b) as the sum of any money received plus the fair market value of the property received.

Petitioner's gain or loss on the short sale of the South Wabash Avenue property is computed pursuant to section 1001. As a general rule, the amount realized includes the full amount of the remaining debt if the debt is nonrecourse. Sec. 1.1001-2(a)(1), Income Tax Regs. Section 1.1001-2(a)(2), Income Tax Regs., however, provides: "The amount realized on a sale or other disposition of property that secures a recourse liability

does not include amounts that are (or would be if realized and recognized) income from the discharge of indebtedness under section 61(a)(12)."

This regulation actually bifurcates a transaction such as the present one into a taxable sale of property and a taxable discharge of indebtedness. Cf. Michaels v. Commissioner, 87 T.C. 1412, 1415 (1986). Accordingly, under this regulation, each part should be treated as a separate transaction for tax purposes. Id.

While the Stevenses' amount realized for the South Wabash Avenue property would be $255,956.27,[2] the application of section 1.1001-2(a)(2), Income Tax Regs., reduces that sum by the amount of income received from discharge of indebtedness. Although the note and deed of trust/mortgage is not in evidence, on the basis of the record we feel confident that the Note was a recourse liability. Therefore, the Stevenses' amount realized for the property was $181,461.31. Accordingly, the Stevenses realized no capital loss on the sale of the South Wabash Avenue property. See sec. 1001(a). The Stevenses realized $74,494.96 of ordinary income from discharge of indebtedness. See sec. 61(a)(12); sec. 1.61-12(a), Income Tax Regs. Since petitioner has not proven

---

[2] This amount represents the sum of $181,461.31 (the net amount to be received at closing and accepted by Homecomings Financial on the short sale) and $74,494.96, the amount characterized as income from cancellation of debt on the Form 1099-C that Homecomings Financial issued to the Stevenses.

that any of the aforementioned exceptions under section 108(a) applies to his case, we hold that petitioner's income for 2003 includes the $74,494.96 from the discharge of indebtedness that was not reported on his 2003 return.[3]

## Section 6662(a) Accuracy-Related Penalty

In the notice of deficiency, respondent determined that petitioner was liable for the accuracy-related penalty under section 6662(a) for underpayment of tax. Section 6662(a) imposes a 20-percent penalty with respect "to any portion of an underpayment of tax required to be shown on a return". This penalty applies to underpayments attributable to any substantial understatement of income tax. Sec. 6662(a) and (b)(2).

An "understatement" of income tax is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return. Sec. 6662(d)(2)(A). An understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

---

[3] Under the applicable Illinois statute, as joint tenants the Stevenses are jointly and severally liable for all debts and obligations arising from their ownership of the South Wabash Avenue property. 765 Ill. Comp. Stat. Ann. 1005/3 (West 2001). Accordingly, and in light of our decision, petitioner might look to a civil remedy against Ms. Stevens (either under Illinois law or pursuant to sec. 6015) for contribution as to the amount of tax due as a result of the income from cancellation of indebtedness for 2003.

Section 6664 provides a defense to the accuracy-related penalty if a taxpayer establishes that there was reasonable cause for any portion of the underpayment and that he or she acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. Although not defined in the Code, "reasonable cause" is determined under the regulations on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The taxpayer's education, experience, and knowledge are considered in determining reasonable cause and good faith. Id. And, generally, the most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id.

Respondent determined an accuracy-related penalty under section 6662(a) to be applicable because petitioner understated his income tax by $21,323 on his return. Because petitioner's understatement of tax was greater than 10 percent of the tax required to be shown on the return or $5,000, the understatement was a substantial understatement of income tax pursuant to section 6662(d)(1)(A).

Petitioner argues that he should not be held liable for the penalty because of his reliance on Ms. Stevens to report all of the Form 1099-C income from the cancellation of indebtedness on her income tax return since both Forms 1099-C were mailed to her address.

Respondent carries the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662.  To meet that burden, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the penalty.  The burden of proof to establish reasonable cause remains with petitioner.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

We conclude that petitioner has failed to show that his reliance on Ms. Stevens's reporting the full amount of income and paying the requisite tax on that income was reasonable.  Petitioner admitted that he knew Ms. Stevens had received both Forms 1099-C and that the amount at issue, $74,494.96, should have been reported--either in full or in part--on one of or both of the Stevenses' returns for that year.  The record is silent as to any facts that would have led to a reasonable assumption on the part of petitioner that he was not responsible for reporting the amount contained on the Form 1099-C in income.  Petitioner has, therefore, failed to carry his burden of showing any reasonable cause for the underpayment of tax for 2003.  See sec. 6664(c)(1).

On the entire record before us, we hold that petitioner has failed to carry his burden of proving that he is not liable for an accuracy-related penalty for 2003 under section 6662(a).  We

accordingly sustain respondent's determination with respect to that issue.

Decision will be entered

for respondent.
