T.C. Memo. 2017-29

UNITED STATES TAX COURT

GRISEL A. SMYTH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10947-14.                      Filed February 7, 2017.

<u>Ira A. Lipstet</u>, for petitioner.[1]

<u>Maria Cerina De Ramos</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, <u>Judge</u>:  The Code helps the working poor who care for

dependent children with tax exemptions, credits, and even outright subsidies.

---

[1] The Court notes that petitioner's counsel volunteered to help generally at calendar call.  He was moved by Ms. Smyth's testimony and entered an appearance for her after trial.  We are very grateful for his exceptional *pro bono* work on her case.

**[\*2]** Grisel Smyth is a loving grandmother who provided a home and care for her two young grandchildren. On her 2012 tax return she claimed them as her dependents and asked the IRS to send her a check for almost $5,300--a refund of over $2,900 for the taxes withheld on her income plus almost $2,400 in refundable credits. The Commissioner denied her claim. The reason? Smyth's unemployed son had already claimed the children on his tax return, gotten a check from the government, and cashed it to spend on drugs.

The Commissioner does not defend the justice of this result, but says the law requires it. We must decide if he is correct.

## FINDINGS OF FACT

Smyth is a certified nursing assistant who lives in El Paso, Texas. For all of 2012 Smyth's adult son, his wife, and their two young children, who were then 2 and 4 years old, lived with Smyth in her home. The children, J.H.K.S. and J.H.Y.S.,[2] are Smyth's grandchildren. Smyth's job is hard, and it does not pay much. But with her wages and Social Security benefits, Smyth had a higher adjusted gross income than either her son or his wife. And in 2012 she provided

---

[2] We refer to minor children by their initials. See Rule 27(a)(3). (And unless we say otherwise, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.)

**[\*3]** all the financial support for the household because her son "did not work, and he was into dealing drugs" while his wife "stayed home and took care of the babies."

Smyth timely filed her 2012 income tax return claiming J.H.K.S. and J.H.Y.S. as her dependents after her son told her that he and his wife were not going to file and that she should try to get back some of the money she had spent supporting his family. All seemed well until Smyth received a notice of deficiency from the IRS in February 2014 that increased her tax by more than $5,000 and determined a penalty of another $1,000.[3] The notice told her that the IRS had decided that J.H.K.S. and J.H.Y.S. were not her "qualifying children." "Qualifying children" is a phrase in tax law that has a very specific meaning, and if a taxpayer like Smyth doesn't have "qualifying children" it means that she doesn't get dependency exemption deductions, child tax credits, or earned-income credits, and can't even use the head-of-household filing status. At first Smyth thought she might have been the victim of identity theft, but then realized that someone else had claimed dependency exemption deductions for J.H.K.S. and J.H.Y.S. for the same year. Smyth's son later admitted that that someone was he and his wife. Smyth's son then offered to write an affidavit in support of her

---

[3] The Commissioner dropped his effort to assess this penalty before trial.

**[*4]** position and even went so far as to prepare an amended 2012 return that deleted his claim that J.H.K.S. and J.H.Y.S. were his dependents. A copy of this amended return was given to the Commissioner's counsel two weeks before trial.

OPINION

Tax day can actually be payday for low-income workers with children. Having a child can entitle a taxpayer to not only an extra exemption on her return, but also a child tax credit, an earned-income credit, and a host of other tax-related benefits. Together these tax incentives can reduce a taxpayer's liability (and even increase her refund) for the year by several thousand dollars. One can see the effect of this system here. Smyth does not make a lot of money at her job, and the refund and subsidies in her case would boost her after-tax income by about 15%. There is, however, a catch--a taxpayer can claim these benefits only if the "child" is a "qualifying child," which is a simple idea in life, but in law is elaborately defined.

I.     "Qualifying Child"

Most people would think they know what a "child" is, but in tax law having a "child" is not enough--the little one must be a "qualifying child." To be a taxpayer's "qualifying child" he must:

[*5] • bear a certain relationship to the taxpayer, including child or grandchild;

• share a home with the taxpayer for more than half of the tax year;

• be less than 19 years old;

• not provide more than half of his own support; and

• not file a joint return.

Sec. 152(c). The parties agree that in 2012 J.H.K.S. and J.H.Y.S. were "qualifying children" of Smyth. They are her grandchildren, lived with her for all of 2012, are less than 19 years old, had no income of their own, and are much too young to have filed joint returns.

The Code, however, lets only one person claim each "qualifying child" each year. Smyth's grandchildren are also the "qualifying children" of their parents, Smyth's son and his wife. And that's the problem here. Congress predicted that there would be some families where more than one person could say a child was her "qualifying child," so the Code has tie-breaking rules. The Commissioner argues that Smyth isn't allowed to claim J.H.K.S. and J.H.Y.S. because under these tie-breaker rules their parents, and not their grandmother, get to claim them. And he might be right--if the same children are the "qualifying children" of both their parents and someone else, then only the parents can claim the children. Sec. 152(c)(4)(A). However, if the children's parents do not claim them, then another

[*6] taxpayer may claim the children as her "qualifying children" if that taxpayer has a higher adjusted gross income than either parent. Sec. 152(c)(4)(C). The Commissioner argues that this exception in section 152(c)(4)(C) doesn't come into play here because Smyth's son and his wife, the children's parents, claimed J.H.K.S. and J.H.Y.S. on their joint return for 2012.

Smyth argues that the IRS is wrong for two reasons. The first is that Smyth's son and his wife never filed an original 2012 return. The second is that, even if he and his wife did file an original return, they also filed an amended return before trial in which they released any claim they had to J.H.K.S. and J.H.Y.S. as their "qualifying children." If either of these is true, then Smyth herself may claim J.H.K.S. and J.H.Y.S. as her "qualifying children" under section 152(c)(4)(C) because she had the highest adjusted gross income in the household that year. We will look at each of these arguments.

A.    Original 2012 Return

There is little evidence to support Smyth's argument that her son and his wife did not file an original 2012 return. The only evidence she had was that she claimed the children on her own return. She argues that this should shift the burden of proving that her son filed a return to the IRS and points us to Shimanek v. Commissioner, T.C. Memo. 2015-165. But that case is different. In Shimanek,

[*7] the parties had let into evidence the sworn statement of a witness who wasn't in court to testify. That was enough evidence to shift the burden of proof. But there's no sworn statement from Smyth's son or his wife or any other witness in the record of this case. We do have Smyth's own testimony, and we did believe her when she said that she didn't know her son and his wife had filed their own 2012 return claiming J.H.K.S. and J.H.Y.S. as their "qualifying children." We also believe her when she said that she would never have claimed her grandchildren as her own "qualifying children" if she thought her son had done so too. But this is evidence of her own honesty and good faith; it is not enough proof that her son didn't say one thing and do another.

We have to find that it is more likely than not that Smyth's son and his wife did indeed file an original 2012 return on which they claimed J.H.K.S. and J.H.Y.S. as their "qualifying children." The IRS has a program that automatically flags returns for further investigation if it notices (by searching for duplicate Social Security numbers) that more than one taxpayer has claimed the same "qualifying child."[4] It's therefore highly likely that Smyth's return was chosen for

---

[4] See Internal Revenue Manual (IRM) pt. 4.19.15.13 (Nov. 29, 2011) (discussing the duplicate taxpayer identification number (DUP TIN) program); id. pt. 4.19.15.13.1 (noting that DUP TIN cases are "systemically processed using Automated Correspondence Exam (ACE) processing"); see also id. pt. 4.19.14.7.1

(continued...)

[*8] review because her son and his wife had already filed an original 2012 return on which they claimed J.H.K.S. and J.H.Y.S. Smyth also testified that her son admitted he filed a return in order to get the refund "for his drugs," and prepared an *amended* return presumably to correct his previously filed original return. Both support our finding that Smyth's son and his wife filed an original 2012 return.

### B. Amended 2012 Return

Remember, though, that Smyth has a backup argument. She also argues that her son and his wife filed an amended 2012 return to take back their claim that J.H.K.S. and J.H.Y.S. were their "qualifying children." This raises two more questions: Did they actually *file* an amended return; and, if they did, would it change the outcome of this case?

#### 1. "Filing" a Return

The Code doesn't define the word "file", but section 6091 helps us. That section says that a taxpayer must file her income tax return in the internal revenue district where she resides or at the service center for that same district. Sec. 6091(b)(1)(A). Most taxpayers also have to file any *amended* return with the correct service center. Sec. 1.6091-2(e)(1), Income Tax Regs. A taxpayer who

---

[4](...continued)
(July 13, 2012).

[*9] wants to file an amended return does not have to mail it to the IRS. He can hand carry it and turn it in to "any person assigned the responsibility to receive hand-carried returns in the local Internal Revenue Service office." Id. para. (d)(1); see also sec. 301.6091-1(c), Proced. & Admin. Regs. (defining "hand carried").

It is undisputed that Smyth's son and his wife prepared an amended 2012 return. Smyth claims that they "filed" this amended return when a copy was delivered by their return preparer to the Commissioner's counsel. That's a problem for Smyth here, because we have already mentioned in another case that "hand delivery of a return to counsel for respondent does not constitute the filing of that return." Quarterman v. Commissioner, T.C. Memo. 2004-241, 2004 WL 2361672, at *3 n.6. Here the problem is that the Commissioner's counsel is neither the service center that serves taxpayers living in El Paso nor a person that the IRS has assigned to receive returns for the local IRS office. Therefore, we have to find that the amended return was not properly "filed" and cannot be the basis for a claim that Smyth's son and his wife gave up their right to claim J.H.K.S. and J.H.Y.S. as their "qualifying children."

Quarterman is not the only case like this. In Espinoza v. Commissioner, 78 T.C. 412 (1982), we found that delivery of a return to an IRS agent did not amount to the filing of the return. And in Friedmann v. Commissioner, T.C. Memo. 2001-

**[\*10]** 207, 2001 WL 883222, at \*7, aff'd, 80 F. App'x 285 (3d Cir. 2003), we held that "the revenue agent was not the prescribed place for filing." This Court has even held that a return mailed to the wrong service center is not officially filed unless and until it is received by the correct service center. See Winnett v. Commissioner, 96 T.C. 802, 808 (1991).

2.  Relinquishing Tax Benefits Related to "Qualifying Children"

Once we find that Smyth's son and his wife filed an original 2012 return claiming J.H.K.S. and J.H.Y.S. as their "qualifying children" but failed to file an amended return giving up that claim, this case looks a lot like Brooks v. Commissioner, T.C. Memo. 2013-141. In Brooks, a taxpayer was living with her daughter and the daughter's son, who was the taxpayer's grandson. The boy was the "qualifying child" of both his mother and the taxpayer and each claimed him on her tax return. Just like they did here, these claims triggered an audit. After the audit began the daughter prepared an amended return taking back her claim that the boy was her "qualifying child," but she never filed it with the IRS.[5] We held in

---

[5] A few cases imply that an amended return *could* under the right circumstances be used to give up a previously claimed dependency exemption deduction. In Brooks, we suggested that if the taxpayer's daughter had prepared an amended return releasing her claim *before* the IRS started auditing her mother and had filed it with the IRS before trial, then the court might have reached a different result. And in McBride v. Commissioner, T.C. Memo. 2015-6, we

(continued...)

**[\*11]** that case that "[o]n this record, we cannot conclude that [the daughter had] released her claim to the dependency exemption deduction." Id. at \*35.  The same is true here--we can't find that Smyth's son and his wife gave up their right to treat J.H.K.S. and J.H.Y.S. as their "qualifying children."  That means that under the tie-breaker rules they, and not Smyth, get to claim the children.

II.    Tax Benefits

Having decided that Smyth may not treat J.H.K.S. and J.H.Y.S. as her "qualifying children" for 2012, we next need to address how this affects her return.

Under section 151(c), a taxpayer is allowed an exemption for each person who is her dependent for the year.  The term "dependent" means either a "qualifying child" or a "qualifying relative."  Sec. 152(a).  A person may be considered a "qualifying relative" of a taxpayer only if he is not the "qualifying

---

[5](...continued)
suggested that a grandfather might be entitled to a dependency exemption deduction for his grandchild if the child's mother had correctly filed an amended return giving up her claim before the IRS was barred from determining a deficiency against her.  Id. at \*4.  We note that the Commissioner points out in his brief that allowing a taxpayer to amend his return--and essentially give his dependency exemption deduction to another--after he has already received a refund because of that deduction effectively puts the IRS in an unmanageable situation.  We don't have to decide this question now, but will have to think about it carefully when someone in a case like this one actually files an amended return to give up a qualifying-child claim.

[*12] child" of any taxpayer for that year.  Sec. 152(d)(1).  As we have already discussed, J.H.K.S. and J.H.Y.S. were the "qualifying children" of Smyth's son and his wife in 2012.  Therefore, under the tie-breaker rules of section 152(c)(4) they were neither Smyth's "qualifying children" nor her "qualifying relatives" under section 152(d)(1).  We have to conclude that she doesn't get a dependency exemption deduction for either child.

Section 32(a)(1) allows an eligible person an earned-income credit against her income-tax liability.  The amount of the credit is based on her earned income, adjusted gross income, and number of "qualifying children."  See sec. 32(b), (f); Gomez v. Commissioner, T.C. Memo. 2016-173, at *5-*6.  Because J.H.K.S. and J.H.Y.S. are not Smyth's "qualifying children,"[6] she would be eligible for the credit, if at all, based only on her earned income for the year.  See sec. 32(a), (c)(1)(A)(ii).  In 2012 a taxpayer needed an adjusted gross income of less than $13,980 to qualify for any amount of earned-income credit as a single taxpayer without any "qualifying children."  Sec. 32(b)(2), (j)(1); Rev. Proc. 2011-52, sec. 3.06, 2011-45 I.R.B. 701, 705.  Smyth's adjusted gross income for 2012 was too high for her to get this credit.

------

[6] Section 32 borrows the definition of "qualifying child" from section 152(c), but changes it in ways that aren't relevant to this opinion.  See sec. 32(c)(3).

**[\*13]** If a taxpayer is entitled to a dependency exemption for a "qualifying child" who is not yet 17 years old, then she also gets a child tax credit for that child. See sec. 24(a), (c). Because we conclude that Smyth didn't qualify for dependency exemption deductions for J.H.K.S. and J.H.Y.S., we likewise deny her a child tax credit for either child.

Income is taxed at different rates according to a taxpayer's filing status. Sec. 1. To qualify for the lower rates given to a "head of household," a taxpayer must, among other things, have a "qualifying child." Sec. 2(b). Because J.H.K.S. and J.H.Y.S. are not Smyth's "qualifying children," she can't use head-of-household filing status for 2012.

III.    Conclusion

We are sympathetic to Smyth's position. She provided all of the financial support for J.H.K.S. and J.H.Y.S., had been told by her son that she should claim the children as her dependents, and is now stuck with a hefty tax bill. It is difficult for us to explain to a hardworking taxpayer like Smyth why this should be so, except to say that we are bound by the law.[7] And it is impossible for us to convince ourselves that the result we reach today--that the IRS was right to send

---

[7] See Nixon v. Commissioner, T.C. Memo. 2011-249, 2011 WL 5061332, at *3 (citing Michaels v. Commissioner, 87 T.C. 1412, 1417 (1986); Brissett v. Commissioner, T.C. Memo. 2003-310).

[*14] money meant to help those who care for small children to someone who spent it on drugs instead--is in any way just. Except for the theory of justice that requires a judge to follow the law as it is but explain his decision in writing so that those responsible for changing it might notice.

Decision will be entered under Rule 155.