T.C. Summary Opinion 2017-77

UNITED STATES TAX COURT

ERIC ALAN HARRIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15433-16S.                    Filed October 3, 2017.

Eric Alan Harris, pro se.

<u>Adam B. Landy</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner seeks review under section 6015(e)(1) of the determination of the Internal Revenue Service (IRS or respondent)[2] that he is not entitled to relief from joint and several liability for taxable year 2012 with respect to a balance due that was reported on the 2012 Form 1040, U.S. Individual Income Tax Return, that he filed with his spouse, Colleen Harris.

The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f) for 2012.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in California when his petition was timely filed.

---

[1](...continued)
Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Court uses the term "IRS" to refer to administrative actions taken outside of these proceedings. The Court uses the term "respondent" to refer to the Commissioner of Internal Revenue, who is the head of the IRS and is respondent in this case, and to refer to actions taken in connection with this case.

Petitioner and Colleen Harris began residing together in January 2012. Petitioner and Mrs. Harris were married on December 21, 2012, and at the time of trial continued to reside together as husband and wife. They consult with each other in financial matters, and each contributes to the household finances. They have separate bank accounts, in addition to their two shared bank accounts, and they pay household bills using all of these bank accounts.

Petitioner has a real estate license and an insurance license and has completed some college credits. At the time of trial petitioner worked in the insurance industry, primarily in group health insurance. During 2012 petitioner was employed by three separate companies, earning wages totaling $3,877. Petitioner also received nonemployee compensation of $3,074 from Global Contact Solutions, LLC, which was reported to him on a Form 1099-MISC.

I.    Joint Income Tax Return for Taxable Year 2012

Petitioner and Mrs. Harris electronically filed a timely joint 2012 Form 1040 on April 15, 2013. Petitioner's occupation was listed as "sales", and Mrs. Harris' occupation was listed as "securities/compliance". The 2012 Form 1040 reported petitioner's wages of $3,877 and Mrs. Harris' income from three

Schedules C, Profit or Loss From Business, totaling $71,684.[3] Petitioner and Mrs. Harris reported total tax of $7,649 and Federal income tax withheld of $154. When they filed their return they made an additional payment of $3,200, resulting in unpaid tax of $4,295.[4]

Petitioner and Mrs. Harris were both involved in the preparation of the 2012 tax return. Mrs. Harris input the data for the return, and petitioner provided documents, discussed with her the issues relating to the preparation of the return, and reviewed and approved the return before it was filed.

When petitioner and Mrs. Harris filed the 2012 Form 1040, petitioner knew that there was an amount of unpaid tax for 2012.

II.     Joint Income Tax Returns for Tax Years 2013 through 2016

Petitioner and Mrs. Harris timely prepared and filed joint Federal income tax returns for tax years 2013 through 2016, reporting income as follows:

---

[3]The record reflects that petitioner did not report his nonemployee compensation of $3,074 on the 2012 Form 1040. It does not appear that the IRS made any adjustments with respect to this unreported income.

[4]Additionally, on April 10, 2015, the California Franchise Tax Board sent to the IRS petitioner's California State income tax overpayment of $1,950 and the IRS applied this overpayment against the balance of tax due for 2012.

| Year | Petitioner's income | Adjusted gross income |
|------|---------------------|------------------------|
| 2013 | $14,371 | $106,410 |
| 2014 | ($^1$) | 130,084 |
| 2015 | 37,450 | 211,266 |
| 2016 | 46,883 | 169,852 |

[1]Petitioner's income for 2014 was not made a part of the record.

In 2015 the IRS conducted a review of unreported income for petitioner and Mrs. Harris' taxable year 2013. The IRS determined that their adjusted gross income for 2013 was $150,707 instead of $106,410 as originally reported on their 2013 Form 1040. On August 6, 2015, petitioner and Mrs. Harris made an advance payment of $8,560 for the additional tax owed for 2013. On September 21, 2015, the IRS assessed for taxable year 2013: (1) additional income tax of $15,988 and (2) an accuracy-related penalty of $1,371.

Petitioner testified that the assessment was the result of Mrs. Harris' receiving a distribution from a retirement account in 2013, which they did not properly report as taxable income on their 2013 Form 1040 because they are "laymen". Petitioner also testified that when "it was brought to our attention we did adjust the payment promptly."

III.    Mrs. Harris' Offer-in-Compromise

Before her marriage to petitioner, Mrs. Harris filed Federal income tax returns for taxable years 2007 through 2011 with a filing status of single.  Mrs. Harris, who was working as an independent contractor for Guardian Life Insurance, did not have any Federal income tax withheld on this income.  Since there was no income tax withholding and/or estimated tax payments, there was a balance due on each of the returns for taxable years 2007 through 2011.[5]  Mrs. Harris did not remit payment with her returns for taxable years 2007 through 2011, and for each of these years after the filing of the return she requested an installment agreement.  The IRS initially granted Mrs. Harris' request for an installment agreement for each year, but each of these installment agreements was subsequently terminated because she did not have sufficient income tax withholding or estimated tax payments in the subsequent year.

When the joint 2012 Form 1040 was filed on April 15, 2013, petitioner knew about Mrs. Harris' underpayments of tax and failed installment agreements

---

[5]The parties stipulated that although Mrs. Harris "received a Form W-2, Wage and Tax Statement annually from Guardian Life Insurance, she was an independent contractor for the company" and that "due to insufficient federal tax withholdings" she owed Federal income tax for taxable years 2007 through 2011. The record does not reflect balances due for Mrs. Harris' taxable years 2007 through 2011.

for taxable years 2007 through 2011 and that she still had balances due for those years and was in the process of applying for an offer-in-compromise (OIC).

Mrs. Harris submitted a Form 656, Offer in Compromise, for taxable years 2007 through 2012, signed and dated May 23, 2013, which the IRS received on June 10, 2013. She offered a $5,000 lump-sum payment to compromise the total balance due for all six years, stating that she could not afford to pay the entire amount because "[t]he amount owed is so great that I will not be able to pay my monthly obligations" such as rent, utilities, and groceries. Mrs. Harris also stated that she would use a distribution from her section 401(k) plan account to obtain the funds for the lump-sum payment of $5,000. Mrs. Harris subsequently submitted an Addendum to Form 656 (addendum), dated February 14, 2014, and received by the IRS on February 19, 2014. In the addendum Mrs. Harris made a lump-sum cash offer of $7,358, increased from her initial offer of $5,000, to settle her liabilities for taxable years 2007 through 2012. By letter dated April 14, 2014, the IRS accepted Mrs. Harris' offer to settle her liabilities for taxable years 2007 through 2012 for $7,358 as set forth in her Form 656 and the addendum.

For reasons unclear from the record, petitioner was not included as an applicant on Mrs. Harris' Form 656 or the addendum despite the fact that she included the 2012 joint income tax liability in her offers.

IV.    Request for Relief From Joint and Several Liability and Petition

After the IRS accepted Mrs. Harris' OIC, it then made a separate assessment of the balance due for 2012 against petitioner.  Petitioner submitted to respondent four separate Forms 656-L, Offer in Compromise (Doubt as to Liability), on October 26, November 30, and December 22, 2014, and January 19, 2015, respectively.  In each Form 656-L petitioner offered either zero or $1 to compromise the liability and asserted that the tax could not be assessed against him because the 2012 liability had been included in Mrs. Harris' OIC, which the IRS had accepted.  The IRS subsequently denied each of petitioner's applications for an OIC, stating that he did not raise an "issue regarding the accuracy or correctness of your tax liability."

On March 19, 2015, the IRS received petitioner's Form 8857, Request for Innocent Spouse Relief.  In his Form 8857 petitioner asserted that initially Mrs. Harris was working with the IRS in finalizing her OIC for only her separate liabilities for taxable years 2007 through 2011 and that "it was advised that she include the balance of our unpaid 2012 tax liability".  Petitioner also asserted that the Form 656 that Mrs. Harris filed "should have included my name as my information was used in the worksheets and assessments".  In the financial statement section of the Form 8857 petitioner listed total monthly income of

$10,666 and total monthly expenses totaling $9,180. Petitioner listed the following assets: (1) a vehicle with a fair market value of $15,000 and a note with a balance of $20,000 and (2) cash in his bank accounts totaling $286. Petitioner did not provide documentation or other evidence to substantiate the amounts listed on his Form 8857 or his assertion that his income was included in determining Mrs. Harris' eligibility for an OIC.

The IRS issued a final Appeals determination, dated May 18, 2016, denying petitioner's request for relief from joint and several liability. Petitioner timely filed a petition in which he asserted that "[t]he original offer in compromise was directed incorrectly when originally filed. My income & debts were used in determination of ability to pay." On August 25, 2016, respondent issued a notice of filing of petition and right to intervene to the nonrequesting spouse, Mrs. Harris, who chose not to intervene in this case. See Rule 325(b).

## Discussion

I.    Relief From Joint and Several Liability Generally

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3); see Butler v. Commissioner, 114 T.C. 276, 282 (2000). Spouses filing a joint tax

return are each fully responsible for the accuracy of their return and for the full tax liability. Butler v. Commissioner, 114 T.C. at 282.

Where, as here, the liability arises from an underpayment of tax reported as due on the return, relief from joint and several liability is available only under section 6015(f). Section 6015(f)(1) gives the Commissioner discretion to grant equitable relief from joint and several liability, known as innocent spouse relief, if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)".

Petitioner, as the requesting spouse, bears the burden of proving that he is entitled to relief under section 6015(f). See Rule 142(a); see also Porter v. Commissioner, 132 T.C. 203, 210 (2009); Boyle v. Commissioner, T.C. Memo. 2016-87, at *7. The Court applies a de novo scope and standard of review in deciding whether a taxpayer is entitled to relief under section 6015(f). Porter v. Commissioner, 132 T.C. at 210. The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f) in Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399-400.

The revenue procedure lists seven threshold conditions, all of which a spouse must meet to qualify for relief under section 6015(f): (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) the

relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions (none of which applies in this case), the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. See Rev. Proc. 2013-34, sec. 4.01. Respondent concedes that petitioner meets these qualifying conditions.

Once the threshold requirements have been satisfied, the Commissioner considers whether the requesting spouse qualifies for streamlined relief. Id. sec. 4.02, 2013-43 I.R.B. at 400. Petitioner does not qualify for streamlined relief because he and Mrs. Harris remain married. Id.

In the absence of a streamlined relief determination, the Commissioner conducts a fact-specific inquiry to determine whether it "is inequitable to hold an individual liable for all or part of any unpaid tax or deficiency arising from a joint return." Id. sec. 2.04, 2013-43 I.R.B. at 397. No one factor is determinative, and "[t]he degree of importance of each factor varies depending on the requesting

spouse's facts and circumstances." Id. sec. 4.03(2), 2013-43 I.R.B. at 400. The factors "are the requesting spouse's: (1) marital status; (2) economic hardship if relief is not granted; (3) knowledge or reason to know that the tax liability would not be paid; (4) legal obligation to pay the outstanding income tax liability; (5) receipt of a significant benefit from the unpaid income tax liability; (6) compliance with income tax laws; and (7) mental and physical health." See Boyle v. Commissioner, at *12-*13; see also Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400-403.

We consult these guidelines when reviewing the Commissioner's denial of relief, but we are not bound by them as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances. See Molinet v. Commissioner, T.C. Memo. 2014-109, at *10; Sriram v. Commissioner, T.C. Memo. 2012-91, 2012 WL 1021315, at *5; see also Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210.

## II. Knowledge of Whether the Tax Liability Would Be Paid

A critical inquiry for this case is whether petitioner either knew or had reason to know that the liability shown on the 2012 Form 1040 would not be paid. Petitioner reviewed the 2012 Form 1040 before it was filed and was aware that he and Mrs. Harris did not remit sufficient payment with the return. Petitioner did

not sign the 2012 Form 1040 under duress. Additionally, before the filing of the joint 2012 Form 1040, petitioner was aware that Mrs. Harris (1) had a history of not paying her income tax liabilities when due, (2) currently had outstanding liabilities for tax years 2007 through 2011, and (3) was applying for an OIC. This factor does not weigh in petitioner's favor.

III.     Economic Hardship

Another critical inquiry is whether failure to grant relief would cause petitioner economic hardship. Respondent asserts that petitioner has not shown that he will suffer economic hardship if relief is not granted. Petitioner asserts that he and Mrs. Harris have "simple finances" and that not granting him relief would cause hardship.

The Commissioner explains in Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401, that "an economic hardship exists if satisfaction of the tax liability in whole or in part will cause the requesting spouse to be unable to pay reasonable basic living expenses." A determination as to whether a requesting spouse will suffer economic hardship is based on rules similar to those in section 301.6343-1(b)(4), Proced. & Admin. Regs. The facts and circumstances considered in this inquiry include: (1) the requesting spouse's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for

food, clothing, housing, medical expenses, transportation, and current tax payments; (3) any extraordinary circumstances such as special education expenses, a medical catastrophe, or a natural disaster; and (4) any other factor bearing on economic hardship. Id.

In addition, the IRS considers the requesting spouse's current income, including how the requesting spouse's income compares to Federal poverty guidelines, and assets in comparison with his or her expenses. Rev. Proc. 2013-34, sec. 4.03(2)(b). "If the requesting spouse's income exceeds 250% of the Federal poverty guidelines, this factor will still weigh in favor of relief if the requesting spouse's monthly income exceeds the requesting spouse's reasonable basic monthly living expenses by $300 or less, unless the requesting spouse has assets out of which the requesting spouse can make payments towards the tax liability and still adequately meet the requesting spouse's reasonable basic living expenses." Id. If the requesting spouse does not fall within either of these situations, the IRS "will consider all facts and circumstances (including the size of the requesting spouse's household) in determining whether the requesting spouse would suffer economic hardship if relief is not granted." Id.

At trial petitioner testified that he and Mrs. Harris had purchased a house in the last year[6] and that their only other assets are their vehicles and modest amounts in their bank accounts, including a savings account with a current balance of $1,600.[7] Petitioner also testified that he and Mrs. Harris do not keep balances on their credit cards and that their current debts are the mortgage on their home, a note on their vehicle with a balance of approximately $19,000, and the 2012 outstanding tax liability.

Petitioner and Mrs. Harris had household income of $169,852 for 2016 and, assuming a similar income level for 2017, this amount is greater than $40,600, which is 250% of the applicable Federal poverty line amount.[8] Petitioner is 50 years old, remains employed, and estimates that his income level for 2017 will be

---

[6]Petitioner testified that purchase price for the house was $520,000 and the current balance on the mortgage is $507,000.

[7]Petitioner testified about the current balances of his bank accounts, estimating that "I think one of them has got $15 * * * another $300 on the shared accounts, and then I think I'm $29 in my personal checking right now, and $1,600 in my personal savings." Petitioner did not provide bank account statements or other evidence to support his testimony.

[8]The parties stipulated the applicable Federal poverty guidelines. The applicable Federal poverty line amount for 2017 for a household of two persons living in the 48 contiguous States and the District of Columbia is $16,240. $16,240 × 250% = $40,600.

similar to his income level for 2016.[9]  Considering the amounts listed on his Form 8857, petitioner's monthly income exceeds monthly expenses by $1,486 ($10,666 – $9,180 = $1,486).  Petitioner also asserts that he owns a home and a vehicle and has funds available in his separate and joint bank accounts, all of which are available to satisfy the outstanding liability.  Petitioner has not provided bank account statements, mortgage statements, or other documents or evidence to support his assertions about his income, expenses, assets, and liabilities.

Considering all the facts and circumstances, petitioner also has not met his burden to prove that, on the basis of his current income, assets, and liabilities, he would suffer economic hardship if relief were not granted.  See Rev. Proc. 2013-34, sec. 4.03(2)(b).

IV.    Additional Factors

We find that the remaining five factors set forth in Rev. Proc. 2013-34, sec. 4.03, are neutral or weigh slightly against relief.  Petitioner and Mrs. Harris remain married, and there is no legally binding agreement between them limiting her obligation to pay the joint liability.  Petitioner did not assert nor offer evidence to

---

[9]Petitioner also asserts that because he earned only $6,951 ($3,877 reported wages + $3,074 unreported nonemployee income) for 2012, if he had filed a separate tax return he would not have owed income tax.  As discussed, the relevant inquiry to determine relief under sec. 6015(f) examines petitioner's current income level.

suggest that his mental or physical health is now impaired or was impaired at the time of trial. It does not appear petitioner received a significant benefit as a result of the underpayment of the 2012 liability, although since he and Mrs. Harris share their finances and Mrs. Harris was earning more income than him, it follows that he received at least some benefit from the $4,295 in unpaid tax.

Additionally, although he and Mrs. Harris timely filed their income tax returns for tax years 2013 through 2016, they did not report (1) petitioner's income from his Form 1099-MISC on their joint 2012 Form 1040 and (2) Mrs. Harris' retirement distribution on their joint 2013 Form 1040.

## V. Offer-In-Compromise

Petitioner further asserts that it is inequitable to hold him liable for the 2012 liability because he should have been a party to the OIC. Petitioner testified that Mrs. Harris originally planned to include only taxable years 2007 through 2011 on her Form 656 and then someone at the IRS suggested: "[S]ince she's got a balance, we can roll everything all together and take care of 2012 as well." Petitioner asserts that he should have been included on the application for the OIC because the IRS considered the total household income to compute Mrs. Harris' eligibility for an OIC and that his inclusion in the application was discussed with

representatives from the IRS.  Petitioner's assertions seem reasonable since the OIC was submitted after the filing of the joint 2012 Form 1040.

The Secretary may compromise any civil or criminal case arising under the internal revenue laws.  Sec. 7122(a); Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).  Section 7122(d) provides that the Secretary "shall prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in compromise is adequate and should be accepted to resolve a dispute."  The Secretary is authorized to compromise a tax liability on any one of three grounds:  (1) doubt as to collectibility, (2) doubt as to liability, or (3) promotion of effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs.  Taxpayers who wish to propose an OIC must submit a Form 656.  See Godwin v. Commissioner, T.C. Memo. 2003-289, 2003 WL 22333018, at *11, aff'd, 132 F. App'x 785 (11th Cir. 2005).

Petitioner was not an applicant on Mrs. Harris' Form 656.[10]  Thus, when the IRS accepted the offer as set forth in Mrs. Harris' Form 656 and addendum, only her liability for taxable year 2012 was compromised.  Because petitioner and Mrs. Harris elected joint filing status for their 2012 Form 1040, the entire 2012 liability could still be assessed against him once the IRS accepted Mrs. Harris' OIC and she was relieved from liability.  See sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. at 282; Godwin v. Commissioner, 2003 WL 22333018, at *11.  This of course is the essence of joint and several liability.

Considering the circumstances of Mrs. Harris' OIC, we are not persuaded that petitioner is entitled to relief under section 6015(f).  Petitioner testified that Mrs. Harris prepared the Form 656 and the addendum herself, with no IRS employee present.  It is not fully clear why petitioner was not included as an applicant on Mrs. Harris' Form 656 and addendum, but he has not asserted, nor is there any evidence of, fraud or deceit on the part of Mrs. Harris or the IRS.  It is also not clear the extent to which petitioner was involved in Mrs. Harris'

_____

[10]Although petitioner submitted four separate Forms 656-L, he is not seeking review of the IRS' determination to reject these offers.  As previously discussed, petitioner has not raised the issue of the correctness or accuracy of the 2012 tax liability; instead he has raised only the issues of (1) whether the IRS' acceptance of Mrs. Harris' OIC relieves him from his joint and several liability for the 2012 unpaid tax and (2) whether he is eligible for relief from joint and several liability under sec. 6015.

preparation of her Form 656 and addendum; for example, it is not clear whether petitioner reviewed either document before its submission to the IRS.

The Court further notes that under "Offer Terms" on page 4 of the Form 656 signed and submitted by Mrs. Harris, the terms listed for an OIC include the following:

> I am submitting an offer as an individual for a joint liability * * * I understand if the liability sought to be compromised is the joint and individual liability of myself and my co-obligor(s) and I am submitting this offer to compromise my individual liability only, then if this offer is accepted, it does not release or discharge my co-obligor(s) from liability. The United States still reserves all rights of collection against the co-obligor(s).

We conclude that petitioner has not met his burden to establish that he is entitled to relief from joint and several liability. See Rule 142(a); Pullins v. Commissioner, 136 T.C. at 438-439; Porter v. Commissioner, 132 T.C. at 210; Boyle v. Commissioner, at *7; Molinet v. Commissioner, at *10; Sriram v. Commissioner, 2012 WL 1021315, at *5.

VI. Conclusion

On the basis of the record before the Court, we conclude that petitioner is not entitled to relief under section 6015(f) for 2012.

We are not unsympathetic to petitioner's plight;[11] however, we are bound by the statute as written and the accompanying regulations when consistent therewith. Michaels v. Commissioner, 87 T.C. 1412, 1417 (1986); Brissett v. Commissioner, T.C. Memo. 2003-310, 2003 WL 22520105, at *3. The simple facts are that petitioner elected to file a joint 2012 Form 1040 with Mrs. Harris, and he was not a party to Mrs. Harris' OIC. Accordingly, we sustain respondent's determination.

To reflect the foregoing,

Decision will be entered for

respondent.

---

[11]It appears that petitioner did not realize the legal implications of electing joint filing status for 2012 combined with the failure to include himself as an applicant on Mrs. Harris' Form 656 and addendum. Petitioner testified that he and Mrs. Harris elected joint filing status for their 2012 Form 1040 because it was "appropriate to our end of the year end status." Mrs. Harris did not testify, and some of the circumstances surrounding the OIC, including the specific advice she received from IRS employees while preparing her Form 656 and addendum, are unclear. It certainly would have been reasonable and appropriate for the IRS to advise Mrs. Harris of the possible consequences of submitting an OIC without petitioner as an applicant when a joint return was filed for 2012. See IRS Publication 1, Your Rights as a Taxpayer; I.R.S. News Release IR-2014-72 (June 10, 2014).